IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SUNOCO, INC. and PUERTO RICO SUN OIL COMPANY, Plaintiffs, | ) | No. 02-466C (Chief Judge Damich) |
| v. | ) | |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL BRIEF

Pursuant to the Court's order following oral argument on February 4, 2003, defendant submits the following supplemental brief.

ARGUMENT

I. Sunoco Is Not Entitled To A Remedy Unless It Can Show Harm

In our moving brief, we explained that Sunoco must allege and prove that it was harmed or prejudiced by the Government's allegedly wrongful action. Def. MSJ at 30-31; Def. Opp. at 24-25. We use the term "harm" in the sense of "the fact of harm," or "the objective fact of injury," a prerequisite for entitlement to a remedy, whether it be damages or some other form of remedy. See 1 D.B. Dobbs, Law of Remedies § 1.1, at 3 n.14 (2d ed. 1993) ("Dobbs").[1] The requirement for injury is illustrated by Plaintiffs in Winstar-Related Cases, 37 Fed. Cl. 174, 184 (1997), a case upon which Sunoco relies. There, the Court stressed the importance of the existence of harm to the viability of plaintiffs' claims, while distinguishing harm from damages.[2]

---

[1] Generally, there are four main kinds of remedies: damages, restitution, coercive remedies, and declaratory remedies. 1 Dobbs § 1.1, at 2.

[2] In Gold Line v. United States, 54 Fed. Cl. 285, 297 (2002), the court held rejected a harm argument like this one, asserting that harm would be assessed at the damages phase. See Pl. Supp. Br. at 5. To the extent that the Court was suggesting that harm and damages are the

Generally, contract remedies relate to one of three interests: expectation, reliance, or restitution. Restatement (Second) Contracts § 344 (1981). Sunoco's briefs do not indicate that any such interests are implicated -- and, that comes as no surprise. Indeed, during contract performance, Sunoco evidently found the EPA clauses agreeable, and presumably to its benefit. Thus, year after year, Sunoco performed the contracts at issue without objection, and the Government paid the agreed amount. Even after contract performance, Sunoco has yet to allege: (1) that it did not receive everything it reasonably expected to receive, (2) that the contract performed other than as expected, (3) that the clauses did not protect Sunoco from "significant fluctuations" in labor or material cost increases, see FAR 16.203-3, or (4) that the contract was the product of fraud, duress, or improper inducement. At its worst, Sunoco's complaint is that the contracting officer failed to obtain a FAR deviation to accept an EPA clause. But, the timely signature of an agency official, which subsequent circumstances demonstrate could have been obtained, cannot conceivably cause harm or have interfered with Sunoco's contracting expectations.

Sunoco's claims are viable only if there is evidence that the EPA clauses at issue harmed Sunoco by depriving it of the fruits of the bargain to which it was entitled by law or contract. The law does not provide for any particular level of payment, and the contract amounts were paid. To the extent that the faulty performance of the clauses is the cause of harm, Sunoco must demonstrate that those clauses failed to protect Sunoco from significant fluctuations in either material costs or established prices. Sunoco has not done so. In circumstances such as these, where the contracts have been fully performed and paid without protest, the Court should leave the parties as it found them. See St. Louis Hay & Co. v. United States, 191 U.S. 159, 163 (1903) (enforcing price of invalid oral

---

same concept, we believe the Court misunderstood the argument.

contract). See also 3 Dobbs § 12.17(6), at 418 (seller who has fully performed normally has a damages action and no claim for restitution).

II. Sunoco's Arguments Regarding "Harm" Are Unfounded

Sunoco maintains that no showing of harm is necessary. First, Sunoco argues that it is seeking "general damages" and that harm need not be proven in such cases. Second, Sunoco argues that no showing of harm is necessary because harm does need not be proven in breach of contract cases. Third, Sunoco argues that it has already produced evidence of harm. Sunoco is wrong in all respects.

A. Sunoco Is Not Entitled To General Damages

Sunoco's first argument is that it need not prove that it was harmed, because it is seeking what it refers to as "general damages" (quoting 3 Dobbs § 12.4(1)). At least in this circuit, the opposite is true. Thus, for example, in San Carlos Irrigation District v. United States, 111 F.3d 1557 (Fed. Cir. 1997), the court denied an award of "general damages" absent proof of causation, noting that "[n]ot every injury resulting from a breach of contract is remediable in damages." Id. at 1563.

Moreover, Sunoco's argument is built upon a misapplication of its own sources. As Dobbs explains, "general damages" also are called "market damages," and are the remedy that is appropriate in those cases in which "harms are measured by market value." 3 Dobbs § 3.2, at 288. Sunoco places the cart before the horse by failing to identify the harm that might be measured by market damages. Thus, although it is true that, in some cases, where a breach has caused an injury, the most suitable remedy might be general or market damages, absent proof of injury, this is not such a case.[3]

[3] For example, if a purchaser refuses delivery of items it has contracted to buy and the seller is forced to sell those items at market value, the seller's damages might be measured by the difference between the market price and the contract price. See U.C.C. 2-708(1), Seller's

The cases upon which Sunoco relies for this argument are ones in which one party has failed to meet its contractual obligations, and harm is evident. What must be measured in those cases, therefore, is the value of the withheld performance. Thus, for example, in Schonfeld v. Hilliard, 218 F.3d 164 (1st. Cir. 2001), a case upon which Sunoco relies, the court explained:

> A plaintiff is seeking general damages when he tries to recover "the value of the very performance promised." [Citation omitted]. General damages are sometimes called "market" damages because, when the promised performance is the delivery of goods, such damages are measured by the difference between the contract price and the market value of the goods at the time of the breach. [Citation omitted].

Id. at 175-76.

The court continued: "When the defendant's conduct results in the loss of an income-producing asset with an ascertainable market value, the most accurate and immediate measure of damages is the market value of the asset at the time of breach – not the lost profits that the asset could have produced in the future." Id. at 176 (emphasis added). Here, given the fact that Sunoco won the contracts at issue, and received millions of dollars without complaint, it is easy to conclude that the Government has done nothing that "results in [a] loss" – and Sunoco has yet to identify any "loss." In order to do so, Sunoco should, at a minimum, show that the combination of its base price and the presumably "legal" escalation clauses[4] would have resulted in a greater return than that which it enjoyed under the allegedly illegal escalation clauses. As noted, given the fact that it won the award of these contracts, and performed them without complaint, Sunoco will be hard pressed to

---

Damages for Non-Acceptance or Repudiation. Here, Sunoco has obtained everything for which it bargained, and, therefore, "market value" is not a relevant measure of damages.

[4] The Government could have chosen either a cost index escalator or, if Sunoco prices could have met the qualifications of FAR 16.203-4, a contractor "established price" escalator. FAR 16.203-1.

demonstrate any such "loss."

B. The Alleged Breach Does Not Equate To Harm

Sunoco's second argument fails because of its faulty premise, i.e., that there has been a breach of contract. A contract breach is defined as the nonperformance of a duty that is due under a contract. Restatement (Second) Contracts § 235. Here, there is no credible allegation that the Government failed to meet a contractual responsibilities.[5] In fact, the premise of Sunoco's case is that Sunoco is entitled to a remedy because the Government failed to meet a regulatory obligation, which, Sunoco asserts, overrides the fact that the Government met its contractual obligations completely. As explained in our briefs, in order to prevail upon the basis of a regulatory violation, a contractor must show that it was harmed or prejudiced by the regulatory violation. Def. MSJ at 30 (discussing LaBarge Products, Inc. v. West, 46 F.3d. 1547 (Fed. Cir. 1995), and PCL Construction v. United States, 41 Fed. Cl. 242 (1998). The Federal Circuit reiterated the LaBarge requirement in Promac, Inc. v. West, 203 F.3d 786 (Fed. Cir. 2000). There, the court affirmed a denial of relief because the contractor was not harmed by the alleged regulatory violation (receipt of price information not received by other bidders) – indeed, it benefitted from the "violation." Id. at 788; accord In re Lees, ASBCA No. 52040, 01-1 BCA ¶ 31,360 (denying relief where procurement violated FAR but contractor had "unclean hands"), aff'd mem. (Fed. Cir.), cert. denied 123 S. Ct. 117 (2002).

Sunoco's second argument also relies upon the assertion that "[v]irtually any breach gives an injured party a claim for damages." Pl. Supp. Br. at 2 (quoting United States v. Winstar Corp., 518

[5] Sunoco's breach allegation is based solely upon the Government's alleged regulatory violation. Complaint at ¶ 45-53.

U.S. 839 (1996)).[6] However, as we have explained, Sunoco is not an "injured" party, and refuses to demonstrate any injury existing apart from the purported breach. Instead, Sunoco insists that, according to the holding in Rumsfeld v. Applied Companies, Inc., 318 F.3d 1317 (Fed. Cir. 2002) (since withdrawn and reissued to correct a factual error at --- F.3d ----, 2003 WL 1733711 (Fed.Cir. Apr 02, 2003)), proof of breach alone equates to an "entitlement to damages." Pl. Supp. Br. at 4. However, that is not the holding of Rumsfeld v. Applied Companies, Inc.. The issue there was whether the breach of a requirements contract might entitle a contractor to lost profits. The court explained that the applicable principle was that the non-breaching party is "not entitled to be put in a better position by the recovery than if the [breaching party] had fully performed the contract," and must demonstrate that the remedy sought (lost profits) was the proximate result of the breach. Id. at * 6. Sunoco's position ignores this principle by seeking to substitute a higher payment than that yielded by full performance.

[6] We are not asserting that harm is never present in illegality cases. Indeed, had DESC asserted that this contract was void and refused to pay according to its terms, equitable principles might come to Sunoco's aid and require that DESC pay at least the value of the benefit it received. E.g., Urban Data Sys. v. United States, 699 F.2d 1147 (Fed. Cir. 1983) (statute prohibited Government from paying cost plus a percentage of cost). Harm would be evident in such a case.

C. Sunoco Has Offered No Evidence Of Harm

Finally, Sunoco asserts that it has produced evidence in this case from which a fact finder could infer harm. Pl. Supp. Br. at 6. In fact, the "evidence" upon which Sunoco relies shows no such thing. At the outset, we note that Sunoco denies its very burden of proof. As explained in our moving brief, in MAPCO Alaska Petroleum, Inc. v. United States, 27 Fed. Cl. 405, 412 (1992) ("MAPCO"), this Court held that where, as here, EPA clauses are used pursuant to the authority of FAR 16.203-3 ("Limitations"), they must address "one of the two mischiefs" described there. The "two mischiefs" to which the court referred were the two conditions set forth in FAR 16.203-3's whose existence permits the use of an EPA clause, i.e., the necessity to "protect the contractor and the Government against significant fluctuations in labor or material costs or . . . provide for contract price adjustment in the event of changes in the contractor's established prices." In MAPCO, the contractor had not been protected from substantial fluctuations in its cost. Here, Sunoco does not allege – and refuses even to address – whether, in fact, the EPA clause protected it from "one of the two mischiefs."

Concerning its alleged evidence of harm, first, Sunoco asserts that, because Sunoco "did not receive a lawful price for its fuel, it has been harmed as a matter of law." Pl. Supp. Br. at 6. But, the regulation at issue does not specify a price.[7] Consequently, Sunoco alleges only that the price "adjustment" mechanism was illegal. Our point is that even a theoretically "illegal" adjustment mechanism, when coupled with a bid price attuned to that mechanism, might very well yield the same price. Moreover, as we have noted above, Sunoco has failed to demonstrate that the price adjustment

[7] Thus, this case is different than Nautilus Shipping Corp. v. United States, 141 Ct. Cl. 391 (1958), a case where sales contracts were reformed when the Government charged purchasers more than the price required by statute.

mechanism did not, in fact, protect it from significant fluctuations in cost and, therefore, that it was illegal or harmful.

Sunoco also asserts that "it was not paid fair market value in accordance with the purpose of DESC's pricing clause." Pl. Br. at 6. We do not understand what this means. As we have repeated, Sunoco agreed to the terms of an unambiguous price clause, which was applied without protest. That clause embodies the parties' entire agreement concerning what Sunoco would be paid. Thus, Sunoco's assertion that the Government agreed to pay, or that the clause guaranteed Sunoco would be paid "fair market value" is true only if "fair market value" refers to the price indicated by the proper application of the clause itself. The clause's sole purpose was to protect Sunoco and the Government from significant fluctuations in cost, and we have yet to receive any evidence that it did not do so -- or that the clause was applied in a manner contrary to its plain language. Thus, we object to Sunoco's use of the undefined term "fair market value" to the extent that it refers to something that was promised, due, or undelivered.

Finally, Sunoco proffers the pro forma assertion of a Sunoco official to the effect that Sunoco would not have agreed to the EPA clause "if it had known that the clause was unlawful." Pl. Supp. Br. at 6. But that evidence only assumes the contract was illegal, and is nothing more than an assertion that Sunoco would not knowingly involve itself in something "illegal." The evidence does not demonstrate that the clauses at issue depressed Sunoco's offer prices or, when those prices were adjusted, that the clauses deprived Sunoco of its reasonably expected earnings.

III. Summary

Our position is clear. Sunoco's contract revenues and the very fact that it won the contracts at issue were the product of Sunoco's bid and the price adjustment formula set forth in the contract. Sunoco understood that mechanism and its expert and officials acknowledge in their affidavits that its base price was dependent upon the operation and features of that mechanism. Thus, Sunoco – as much as the Government – established Sunoco's revenue objectives. During performance, the unique pairing of Sunoco's base price and the escalation mechanism to which Sunoco calibrated its base price determined Sunoco's contract revenues. Sunoco has yet to complain that it set its base price too low, that the adjustment mechanism did not act as it expected, that the contract did not satisfy Sunoco's reasonable expectations, or that the clauses did not act as the regulation required, i.e., that they protect against significant fluctuations in costs. See FAR 16.203-3.

Under these circumstances, Sunoco cannot demonstrate that anything the Government did diminished Sunoco's lot in any way. Accordingly, Sunoco need not be made whole -- because it is whole. Nonetheless, Sunoco argues that the Government must undergo the ordeal of "expert roulette," where "experts" will square off to second-guess the prices the market has forged. But, this will not produce a "remedy." In fact, Sunoco does not seek a "remedy." Rather, Sunoco would have the Court punish the Government for what Sunoco charges is "illegal" behavior.[8] Of course, no schedule of fines exists for the charged behavior, and no fund exists into which any such fine might be deposited. Undeterred, Sunoco suggests that the fine be "fair market value" -- a term not found in its contracts -- and that the recipient of the fines be Sunoco itself. This is not a recipe for justice. It is

[8] See Leesona Corp. v. United States, 220 Ct. Cl. 234, 252, 599 F.2d 958, 969 (1979) (no waiver of sovereign immunity for award of damages based upon intent to punish the Government).

a recipe for a windfall.

Sunoco is not, as it pretends, "an innocent bystander being taken advantage of by a predator government." American Telephone & Telegraph Co. v. United States, 177 F.3d 1368, 1384-85 (Fed. Cir. 1999) (en banc)(concurring opinion). Sunoco "knew exactly what it was doing when it entered into this deal. . . . ." Id.. "The law in a case like this leaves the parties where it found them." Id.

CONCLUSION

For these reasons and those presented in our briefs and during oral argument, we respectfully request that Sunoco's complaint be dismissed.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General

DAVID M. COHEN
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Senior Trial Counsel
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 616-2311
Fax: (202) 353-7988

Attorneys for Defendant

OF COUNSEL:

BERNARD A. DUVAL
Counsel

HOWARD M. KAUFER
Assistant Counsel
Office of Counsel
Defense Energy Support Center
Ft. Belvoir, VA

April 11, 2003

CERTIFICATE OF FILING

I hereby certify that on April 11, 2003, a copy of the foregoing document was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Steven J. Gillingham