IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SUNOCO, INC., and<br>PUERTO RICO SUN OIL COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 02-466C<br>(Chief Judge Damich) |

**PLAINTIFFS' STATUS REPORT**

Plaintiffs, Sunoco, Inc. and Puerto Rico Sun Oil Company (collectively "Sunoco"), hereby submit this Status Report in order to bring to the Court's attention the recent decision in *Phoenix Petroleum Co. v. United States*, No. 97-315C (Fed. Cl. Apr. 30, 2003) (attached). In that decision, the Court held, *inter alia*, that: (1) DESC's fuel prices are illegal; (2) an affected supplier "is entitled to *quantum valebant* relief or, in the alternative, reformation"; (3) DESC's harm "argument must fail" because "there is clearly a genuine issue as to material issues of fact regarding harm or damages"; and (4) Phoenix Petroleum did not waive its claim.

Respectfully submitted,

s/J. Keith Burt

J. Keith Burt
Mayer, Brown, Rowe & Maw
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3208 (Phone)
(202) 263-5208 (Fax)

Attorneys for Plaintiffs
Sunoco, Inc. and
Puerto Rico Sun Oil Company

*Of Counsel:*

Gary A. Winters
Mayer, Brown, Rowe & Maw
1909 K Street, N.W.
Washington, D.C. 20006

May 14, 2003

# In the United States Court of Federal Claims

FILED
APR 30 2003
U.S. COURT OF FEDERAL CLAIMS

PHOENIX PETROLEUM COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 97-315C

(Filed: April 30, 2003)

## OPINION

In this Government contracts action, plaintiff claims that it is entitled to quantum meruit recovery because an economic price adjustment ("EPA") clause in its jet fuel contract with the Government allegedly violated § 16.203 of the Federal Acquisition Regulation ("FAR") and was, therefore, illegal. This case is before the Court on defendant's motion for summary judgment, and on plaintiff's cross-motion for partial summary judgment. Defendant argues that the Court should grant summary judgment for defendant because (1) the EPA clause was authorized and enforceable, (2) plaintiff was not harmed by the EPA clause, and (3) plaintiff waived its right to bring the claim. Plaintiff counters that it is entitled to partial summary judgment on the issue of the legality of the EPA clause. After careful evaluation of both parties' briefs, and after hearing oral argument, the Court denies defendant's motion for summary judgment and grants plaintiff's cross-motion for partial summary judgment.

## FACTS

On September 8, 1989, the Defense Fuel Supply Center ("DFSC")[1] awarded contract DLA600-89-D-0572 ("572 contract") to plaintiff, Phoenix Petroleum Company ("Phoenix"), to deliver JP-4 jet fuel to four (and later five) military bases in Pennsylvania and Ohio for one year. The 572 contract contained an EPA clause, B19.33, which provided that the contract price for jet fuel would be adjusted on a monthly basis. Specifically, the B19.33 clause provided that the

[1] DFSC later changed its name to the Defense Energy Support Center.



DW

contract price would be adjusted upward or downward based on indexes of the sales of refined petroleum products as reported in *Petroleum Marketing Monthly* ("PMM"), a publication of the Department of Energy, Energy Information Administration. Plaintiff completed the 572 contract in September 1990.

On September 1, 1995, plaintiff submitted a claim to the DFSC contracting officer seeking an adjustment of the final prices under the 572 contract. Plaintiff based its claim on an opinion from this Court, MAPCO Alaska Petroleum, Inc. v. United States, 27 Fed.Cl. 405 (1992), holding that clause B19.33 was invalid. In MAPCO, the Court noted that FAR § 16.203-1 provides for only three types of economic price adjustments, and found that EPA clause B19.33 did not fit within any of the three EPA types. Id. at 408-11. The Court held that the contract did not comply with FAR § 16.203 and was, therefore, illegal. Id. at 416.

The contracting officer denied plaintiff's claim. Plaintiff then filed the instant action in this Court alleging that contract 572 was illegal because EPA clause B19.33 violated FAR § 16.203. Plaintiff seeks to recover, under a *quantum meruit* theory, the difference between the fair market value of the fuel that plaintiff supplied to the United States and the amounts plaintiff received under the contract.

On defendant's motion for summary judgment, this Court dismissed plaintiff's action on standing and *res judicata* grounds. Phoenix Petroleum Co. v. United States, 40 Fed. Cl. 862 (1998). The United States Court of Appeals for the Federal Circuit, however, reversed this Court's dismissal. Phoenix Petroleum Co. v. United States, 215 F.3d 1345, 1999 WL 521189 (Fed. Cir. 1999). This action is now before the Court on defendant's motion for summary judgment and plaintiff's cross-motion for partial summary judgment.

## DISCUSSION

### 1. Legality of EPA Clause B19.33

At the outset, the Court notes that, in at least two other cases, the Government has conceded that the DFSC EPA clauses based on PMM indexes were invalid. Barrett Refining Corp. v. United States, 42 Fed. Cl. 128, 130 (1998) ("The Government concedes that the pricing mechanisms used in the contracts at bar were unauthorized."); Pride Cos. v. United States, No. 95-597C, 2000 U.S. Claims LEXIS 213, at *2-3 (May 10, 2000) ("The Government concedes that the contracts were illegal...."). Moreover, in responding to plaintiff's appeal of this Court's dismissal of the instant case on standing and *res judicata* grounds, the Federal Circuit noted that "[t]he Government has never successfully challenged these holdings and has stipulated to the illegality of B19.33 in this case." Phoenix Petroleum Co., 1999 WL 521189, at **2.[2]

[2] Defendant now contends it did not stipulate to the illegality of B19.33 in the instant case. This Court notes, however, that the defendant never sought correction, reconsideration, or review by the Court of Appeals as to the Government's purported stipulation.

Additionally, in denying plaintiff's claim on other grounds, the cognizant contracting officer conceded the illegality of the B19.33.

Apparently having second thoughts about its concessions in Barrett and Pride, and its purported stipulation in the instant case, defendant now asserts that the EPA clause B19.33 is legal and enforceable, and that the Court in MAPCO Alaska Petroleum, Inc. v. United States, 27 Fed.Cl. 405 (1992), and in Gold Line Refining, Ltd. v. United States, 54 Fed. Cl. 285 (2002), erred in holding that the clause was invalid. Defendant argues that the statement in FAR § 16.203-1, "Economic price adjustments are of three general types," is a simple declarative statement, not mandatory prohibitory, or exclusionary, and that there is no language in FAR that expressly limits the contracting officer to the three types of EPAs described in that section. Accordingly, defendant contends that B19.33 was a permissible EPA clause. Defendant argues further that, even if FAR limits EPA clauses to the three general types listed in FAR § 16.203-1, the B19.33 clause was an adjustment based on an "established price," the first of the three EPAs permitted by FAR. 48 C.F.R. § 16.203-1(a).

This Court has ruled on the legality of the DFSC's EPA clause B19.33 in at least two previous cases: MAPCO and, more recently, Gold Line. In both cases, this Court held that the clause was not one the three types of EPAs permitted under FAR § 16.203-1 and that, therefore, the clause was invalid. MAPCO, 27 Fed.Cl. at 408 ("[T]he court is satisfied that the EPA clauses are plainly inconsistent with the FAR."); Gold Line, 54 Fed. Cl. at 295 ("Seeing no salient distinction between the legal arguments addressed in MAPCO and advanced by defendant here, the court concludes that Clause B19.33 did not comply with the FAR.").

FAR 16.203-1, which governs the use of EPAs in fixed-price contracts, states:

> A fixed-price contract with economic price adjustment provides for upward and downward revision of the stated contract price upon the occurrence of specified contingencies. Economic price adjustments are of three general types:
>
> (a) Adjustments based on established prices. These price adjustments are based on increases or decreases from an agreed-upon level in published or otherwise established prices of specific items or the contract end items.
>
> (b) Adjustments based on actual costs of labor or material. These price adjustments are based on increases or decreases in specified costs of labor or material that the contractor actually experiences during contract performance.
>
> (c) Adjustments based on cost indexes of labor or material. These price adjustments are based on increases or decreases in labor or material cost standards or indexes that are specifically identified in the contract.

48 C.F.R. § 16.203-1.

Additionally, the FAR expressly limits the use of EPAs to certain specific circumstances:

> A fixed-price contract with economic price adjustment shall not be used unless the contracting officer determines that it is necessary either to protect the contractor and the Government against significant fluctuations in labor or material costs or to provide for contract price adjustment in the event of changes in the contractor's established prices.

48 C.F.R. § 16.203-3.

The Court finds defendant's arguments–that clause B19.33 was valid under the FAR–to be unpersuasive. Defendant's same arguments were thoroughly analyzed and rejected in both MAPCO and Gold Line, and defendant has not demonstrated that the Court's holdings in those cases were erroneous. Additionally, the Federal Circuit recently noted that "[t]he determination in MAPCO that only the price escalation term was unenforceable and invalid...is consistent with our case law." Barrett Refining Corp.v. United States, 242 F.3d 1055, 1060 n.2 (Fed. Cir. 2001).

This Court is persuaded, as was the Court in Gold Line, that "[t]he rules of statutory construction provide that, if a statute provides that a thing shall be done in a certain way, there is a rebuttable presumption under the rules of statutory construction that an implied prohibition against doing that thing in any other way exists." Gold Line, 54 Fed. Cl. at 292. Therefore, the Court "agrees with the Court in MAPCO that the phrase 'of three general types' in FAR 16.203-1, limits the permissible categories of EPA clauses." Id.; MAPCO, 27 Fed.Cl. at 412.

Furthermore, this Court agrees with the holding in Gold Line that the term "established prices" in FAR § 16.203-1(a) means "contractor's established prices," as provided in FAR § 16.203-3. "Because it is located in the same section, the language of 16.203-3 plainly gives meaning to the phrase 'established prices' used in § 16.203-1(a)." Id. at 295; see also MAPCO, 27 Fed.Cl. at 410 (concluding, based on rules of statutory construction, that "established prices" as used in § 16.203-1(a) means "contractor's established prices.") Thus, clause B19.33 does not fit in one of the three types of EPA clauses prescribed by FAR § 16.203-1 and is, therefore, invalid.

Accordingly, the Court grants plaintiff's cross-motion for partial summary judgment as to the issue of the illegality of the EPA clause.

**2. Harm to Plaintiff**

Alternatively, defendant asserts that, even if the Court holds that clause B19.33 was illegal, plaintiff has failed to demonstrate that it was harmed by DFSC's use of the illegal clause. Plaintiff counters that it has submitted various spreadsheets and other documentation demonstrating its damages resulting from pricing based on clause B19.33. In his August 20, 2002 declaration, Stephen Wang, plaintiff's president, states that plaintiff's damages amounted to

approximately $4 million to $6 million. Defendant, however, disputes plaintiff's assertion that it suffered damages. Defendant asserts that, to establish liability, plaintiff must show that the EPA clause failed to perform correctly or failed to accomplish the objectives of FAR. Defendant further argues that the plaintiff has not shown that the clause failed to reflect market conditions, protect it against cost fluctuations, or otherwise do what the parties intended.

This Court, however, agrees with the Court in Gold Line, which noted that "the proper inquiry for the court is not whether clause B19.33 operated consistently with the 'objectives' of the FAR, but whether the clause complied with the requirements of the FAR." Gold Line, 54 Fed. Cl. at 295. Having found clause B19.33 to be invalid, the clause is stricken, and then the "express contract simply incorporates an implied-in-fact promise by the government to pay at least fair market value for the fuel delivered by [the contractor] under the contract." Barrett Refining Corp., 242 F.3d at 1059. Accordingly, "plaintiff is entitled to quantum valebant relief or, in the alternative, reformation of the EPA clause, the illegal contract term, in either case tailored to further, to the extent possible, the mutual intent of the parties to adjust prices in accordance with the FAR." Gold Line, 54 Fed. Cl. at 298.

On a motion for summary judgment, the moving party bears the burden of demonstrating the absence of genuine disputes over material facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). As there is clearly a genuine dispute as to material issues of fact regarding harm or damages in the instant case, defendant's argument must fail.

**3. Waiver**

Finally, defendant argues that, even if the Court were to find that clause B19.33 was invalid and that plaintiff was harmed by its application, plaintiff failed to challenge the clause during the execution of the 572 contract, or at any time before its completion, and thereby waived any right it may have had to later object to the clause.

As fluctuations in economic conditions are unpredictable, misapplication of rules governing EPA clauses could potentially harm either the Government or the contractor, depending on what economic conditions ultimately come to pass. The Court finds, therefore, that the FAR provisions at issue were intended to benefit both contractors and the Government. Under such circumstances, "'if government officials make a contract they are not authorized to make, in violation of a law enacted for the contractor's protection, the contractor is not bound by estoppel, acquiescence, or failure to protest.'" Cessna Aircraft Co. v. Dalton, 126 F.3d 1442, 1451 (Fed. Cir. 1997) (quoting LaBarge Prods., Inc. v. West, 46 F.3d 1547, 1552 (Fed.Cir.1995)).

The facts in Beta Systems, Inc. v. United States, 838 F.2d 1179 (Fed. Cir. 1988), are analogous to those in the instant case. There, at issue was an EPA clause that was intended to adjust the contract price for changes in labor and material costs, which was based on an index published by the Bureau of Labor Statistics. Id. at 1180. During contract performance, the

contracting officer reduced the contract price in accordance with the EPA clause, while Beta Systems' costs allegedly dramatically increased due to unusual increases in the price of aluminum, the major material used for the contract. Id. Beta Systems argued that the use of the index to adjust its contract was improper because it violated the Defense Acquisition Regulation ("DAR") provision governing the use of indexes in adjusting contract prices, which provided:

> An index should be structured to encompass a large sample of relevant items yet bear a logical relationship to the type of contract costs being measured. The basis of the index should not be so large and diverse that it is significantly affected by fluctuations not relevant to the contract performance, yet must be significantly broad so as to assure the minimal effect of any single company, including the anticipated contractors.

Id. at 1185 (quoting DAR 3-404.3(c)(3)c.5 (1981)).

In Beta Systems, the defendant argued that the contractor knew or should have known that the index used in the contract might not track the price of aluminum. The Federal Circuit, however, held that if the use of Bureau of Labor Statistics in the Beta Systems contract violated the DAR, even given the legal presumption that the Government did not intend to use an index that would violate the law, "the government can not, by law, benefit from it." Id. at 1185-86.

Similarly, in the instant case, the EPA clause in the contract at issue was based on an index that did not comply with the applicable FAR provisions. However, "[t]he risk of unintentional failure of a contract term to comply with a legal requirement does not fall solely on the contractor." Id. at 1185.

Defendant asserts that, in Gold Line–where the legality of DFSC's clause B19.33 was also at issue–the Court erred in rejecting defendant's waiver argument. Defendant argues that in the instant case, as in Gold line, the Federal Circuit's holding in Whittaker Elec. Sys. v. Dalton, 124 F.3d 1443 (Fed.Cir.1997) is dispositive. In Whittaker, a contractor negotiated and performed a contract with an option clause that purportedly contained a regulatory violation, which the contractor argued rendered the contract void *ab initio*. The Federal Circuit held that "[t]he doctrine of waiver precludes a contractor from challenging the validity of a contract... where it fails to raise the problem prior to execution, or even prior to litigation, on which it later bases its challenge." Id. at 1446. The Court in Gold Line, however, found the Whittaker holding to be distinguishable from its case. Gold Line, 54 Fed. Cl. at 296. In Gold Line, the Court found that "[t]he alleged breach of procurement regulations in Whittaker occurred after the contract award, while the breach in this case was 'inherent in' the award." Id. (quoting Applied Devices Corp. v. United States, 591 F.2d 635, 640-41 (1979)).

This Court finds that the Gold Line Court's rejection of defendant's waiver argument was well reasoned. The holding in Whittaker, which dealt with an allegedly illegal option clause, is inapposite to the instant case, where the illegal contract clause was central to the mechanism by

which performance of the entire contract was priced. While a contractor may waive, by its silence, the Government's breach of a contract resulting from a violation of a provision of law as to which the contractor derives an incidental benefit, "such cases must be distinguished from those in which a breach of law is inherent in the very writing of the contract involved. In such cases reformation is available despite the initial adherence of the contractor to the contract provision now shown to be illegal." Applied Devices, 591 F.2d at 641. The Court, therefore, finds that plaintiff has not waived its right to object to the 572 contract on grounds that the EPA clause B19.33 was illegal.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is DENIED, and plaintiff's cross-motion for partial summary judgment is GRANTED.

Lawrence S. Margolis

LAWRENCE S. MARGOLIS
Senior Judge, U.S. Court of Federal Claims

April 30, 2003