IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HERMES CONSOLIDATED, INC.<br>Doing business as Wyoming<br>Refining Company,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 02-1460C<br>(Judge Block) |

DEFENDANT'S SUPPLEMENTAL BRIEF ON WAIVER AND LACHES

The Government's respectfully submits this supplemental brief in response to the questions posed by the Court's Opinion and Order dated August 7, 2003.

1. **In the context of this case, can knowledge of this court's decision in *MAPCO* be imputed to Wyoming such that waiver would apply?**

The Government respectfully submits that Wyoming's knowledge of this Court's decision in MAPCO is not relevant to waiver. As this Court's opinion explains, parties are presumed to know the law, and ignorance of it is no excuse. (Slip Op. at 21). Here, Wyoming is presumed to have knowledge of the Federal Acquisition Regulation ("FAR"), especially those portions relating to its contract pricing. The content of the FAR provision at issue was fixed well before Wyoming executed the first contract that it now complains violated the regulation.[1] As the court of appeals has explained in this regard: "Any later judicial pronouncements simply explain, but do not create, the operative effect of the law." Catawba Indian Tribe of South Carolina v. United States, 982 F. 2d 1564, 1570 (Fed. Cir. 1993). See also, Jones v. United States, 6 Cl. Ct. 531, 533 (1984) ("In dismissing plaintiff's claim, the court noted that the

[1] The provisions of the FAR pertaining to EPA clauses became effective on April 1, 1984, more than two years before the first contract at issue.

Supreme Court did not make the law, but merely 'threw judicial light upon what had been the law for more than eighty years, as everybody was bound to know'")(quoting Ide v. United States, 25 Ct. Cl. 401 (1890)).

By the same logic, MAPCO did not create law; it only explained the law, the correct knowledge of which must be imputed to Wyoming at the time it entered all of its contracts. Charged with knowledge of the FAR and its awareness of the pricing mechanism contained in the contracts, Wyoming had all the knowledge necessary to appreciate its potential cause of action and to waive it.

If this presumed knowledge were not sufficient, the Government has reason to believe that Wyoming may have received a letter from its current counsel not long after the MAPCO decision issued expressly outlining its rights according to MAPCO. Appendix 1. If that is so, plaintiff has no legal or practical excuse for its lack of diligence.

**2. Is a hearing or trial necessary in order to develop a factual record on the issue of waiver?**

As the Court's opinion explains, waiver requires "voluntary relinquishment of a known right or claim." Slip Op. at 20 (quoting Seaboard Lumber Co. v. Untied States, 903 F.2d 1560, 1563 (Fed. Cir. 1990)).

The "right" at issue presumably flows from FAR provisions in force at the time of Wyoming's offer. As noted above, knowledge of the FAR is imputed to Wyoming. Wyoming's claim, if any, would have required only the aforementioned knowledge of the FAR and of the explicit terms of the solicitations at issue. Wyoming has never suggested, nor could it, that it did not know or understand those terms. Indeed, Wyoming bid again and again on solicitations setting forth the very same EPA clauses about which it now complains. As improbable as it

would have been, had Wyoming not understood what the Petroleum Marketing Monthly was or how to fashion an appropriate offer, Wyoming should not have (indeed, common sense suggests, it "would not have") submitted its bids without at least signifying its difficulties to the contracting officer. Wyoming did no such thing. See, e.g., Dale Ingram, Inc. v. United States, 475 F. 2d 1177, 1187 , 201 Ct. Cl. 56, 74 (1973) (relief will not be granted for the unilateral mistake of one of the parties). For these reasons, no trial is required concerning Wyoming's potential right or claim.

Similarly, there is no need for a trial concerning the voluntariness of Wyoming's relinquishment of its right or claim. The record shows that Wyoming bid year after year on the Government's solicitations. The Contracting Officer has submitted a declaration stating that Wyoming did not object to the market-based EPA clauses in the contracts and did not object to the many modifications changing the contract price in accordance with those clauses. Def. App., Exh. 1, Walker Decl. ¶ 11. Wyoming's silence is particularly significant in light of the fact that it had the right and the opportunity to protest the solicitation with the agency or with the General Accounting Office. 31 U.S.C. § 3552. In fact, a provision in the solicitation, L5, Service of Protest, notified Wyoming of its right to protest. See, e.g., Pl. App. 557. Wyoming also could have filed suit in this Court. 28 U.S.C. § 1491 (b)(1).

Absent any suggestion in the record that Wyoming's waiver was involuntary, and given ample evidence to the contrary, a hearing or trial on this issue would serve no useful purpose. Instead, the issue should be resolved summarily upon the basis of a simple but venerable rule: "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the

law." Upton v. Tribilcock, 91 U.S. 45 (1875).

**3. Does the doctrine of laches apply in this case, and if so, whether the court may raise the issue sua sponte? Assuming laches applies, is a hearing or trial necessary to resolve the matter?**

In order to establish laches, a defendant must prove both an unexcused and unreasonable delay, as well as prejudice flowing from that delay. A. C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F. 2d 1020, 1032 (Fed. Cir. 1992). The type of prejudice may be economic or evidentiary. Id. at 1033. Economic prejudice supporting laches arises when the defendant will suffer monetarily what it would not have suffered had suit been filed earlier. The damages or losses cannot be "merely those attributable to a finding of liability" for the conduct alleged. Ackerman. Id. Some change in position of the defendant during the period of delay must exist before laches can be found.

As noted in our discussion on waiver, plaintiff had all the knowledge it needed to challenge the clauses at issue when it received a copy of the Government's solicitations. Yet, Wyoming never did.[2] As a result, the Government awarded contracts to Wyoming based upon its offer prices, in preference to other offerors who bid under the same solicitations. The Government's contracting officers made price reasonableness determinations, as required by the FAR, based on competition that existed when Wyoming made its offers. Faced now with Wyoming's claim for $33, 439, 942.05, which is an astonishing 17.6% increase over the contracts' approximately $190,000,000 total payments, the Government no longer has other bidders. Moreover, had Wyoming protested an EPA clause anytime prior to submitting its

[2] Bidders on Government solicitations are required to protest errors plain on the face of the solicitations before they make their offers. Otherwise they lose their rights to protest. FAR 33.103(e); 4 C.F.R. 21.2(a)(1).

belated claims, DESC could, at a minimum, have obtained a deviation or revised the clause. Now, it is too late. To the extent that discovery is necessary, evidentiary prejudice to the Government also may be revealed, if witnesses prove to be unavailable or unable to recall important details, or documents prove to be lost or destroyed.

These circumstances evoke the court's admonition in E. Walters & Co., Inc. v. United States, 217 Ct. Cl. 254, 576 F.2d 362 (1978). There, a fuse supplier (Walters) claimed that the Government had violated the ASPR by exercising an option that, in effect, permitted the Government to procure additional fuses at a lower price than if it had purchased the entire amount in a single order. The ASPR prohibited the Government from exercising an option when "the option quantities represent known requirements for which procurement funds are available," and the Government had just such a requirement. 576 F.2d at 365. Based upon the ASPR, Walters assumed that the option would not be exercised for the funded requirement. Later, Walters learned that its assumption was wrong, but it said nothing when the Government exercised the option. After delivery, Walters submitted a claim seeking the higher price. The contracting officer and the board of contract appeals concluded that the claim was waived. Id. at 366.

On appeal, the court held that the option provision was "in direct conflict with" the ASPR, but that Walters consciously chose to "fully perform the contract as if there were contemporaneous agreement of the parties on the proper interpretation of the terms of he [solicitation]," and "the Government was prejudiced." Id. at 368. As the Court explained it:

> [T]he doctrine of estoppel is also for application. Had plaintiff protested the use of the option provision at the time of award, defendant would have been in a position to either reaffirm its use of the option provision. in apparent disregard of the ASPR prohibition, with the further knowledge that it could later be faced

> with a claim for the [higher] price; or it could have elected instead, to award the non set-aside quantity in the next least expensive manner . . . . Plaintiff's silence deprived the Government of that relatively painless alternative.

Id.

Wyoming's silence has deprived the Government of any "relatively painless alternative." Instead, Wyoming would have this Court indulge Wyoming in an after-the-fact, competition-free, speculatively-priced claim. As did the contractor in Ling-Temco-Vought, Inc. v. United States, 201 Ct. Cl. 135, 475 F.2d 630 (1973), Wyoming has, in effect "retained all options for itself . . . made its calculations entirely in its own favor, without proper consideration of the defendant's position," and violated the "basic principle calling for fair treatment of both parties." 201 Ct. Cl. at 148, 475 F.2d at 638.

Concerning whether the Court may raise this matter *sua sponte*, we are aware of no reason why it may not. Laches is a matter within the discretion of the court. Aukerman, 960 F. 2d at 1032. It is a "flexible concept based on fairness." O'Brien v. United States, 148 Ct. Cl. 1,3 (1960). As the Court has noted, at least one respected treatise concludes that laches "'may be raised by the court *sua sponte* even if counsel does not raise it.'" Slip op. at 21, n. 21 (quoting Dan B. Dobbs, The Law of Remedies § 2.4(2)).[3] Needless to say, stale claims also are a burden upon the Court.

Regarding whether trial or hearing is necessary, as outlined above, a hearing or trial is

---

[3] To the extent that the Court is concerned that defendant has not explicitly "plead" the matter, the time for us to do so has not past. If our motion for summary judgment were denied, we would file a responsive pleading and include all defenses in a responsive pleading. See RCFC 12(a)(2)(A) (altering the time for a responsive pleading when a RCFC 56 motion has been filed). Moreover, we have discussed the prejudice attending to plaintiff's delay in the context of the estoppel argument presented in our briefs.

not required to resolve the issue of laches in favor of the Government. However, a hearing or trial would be necessary to resolve the issue against the Government. This is because the Government does not yet know if it has been prejudiced in defending itself by plaintiff's delay in filing its claims. Only discovery will disclose this form of prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Senior Trial Counsel
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 616-2311
Fax: (202) 353-7988

Attorneys for Defendant

OF COUNSEL:

BERNARD A. DUVAL
Counsel

HOWARD M. KAUFER
Trial Attorney
Office of Counsel
Defense Energy Support Center
Ft. Belvoir, VA

August 15, 2003

APPENDIX

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HERMES CONSOLIDATED, INC.<br>Doing business as Wyoming<br>Refining Company<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 02-1460 C<br>(Judge Block) |

DECLARATION OF HOWARD M. KAUFER

1. My name is Howard M. Kaufer and I am an attorney with the Defense Energy Support Center (DESC). I have been with DESC since 1984.

2. Attached to this declaration are two letters from the law firm of McKenna & Cuneo regarding the MAPCO decision. The first letter is dated February 10, 1994, and is addressed to Brewer Oil Company, Inc. The second letter, dated June 8, 1994, is addressed to Motor Oil Hellas Corinth Refineries SA.

3. Both of the letters were in my office files. Because of the number of years that have passed since I received the letters, I cannot recall the specifics of how

I acquired them. I believe that I received them from agency contracting personnel and that this took place around the time the letters are dated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 15, 2003.

Howard M. Kaufer

HOWARD M. KAUFER

LAW OFFICES
McKENNA & CUNEO

WASHINGTON, D.C.
1575 EYE STREET, N.W.
WASHINGTON, D.C. 20005
(202) 789-7500

LOS ANGELES
444 SOUTH FLOWER STREET
LOS ANGELES, CA 90071
(213) 688-1000

SAN FRANCISCO
STEUART STREET TOWER
ONE MARKET
SAN FRANCISCO, CA 94105
(415) 267-4000

SAN DIEGO
SUITE 3200, SYMPHONY TOWERS
750 B STREET
SAN DIEGO, CALIFORNIA 92101
(619) 595-5400

DENVER
SUITE 4800
370 SEVENTEENTH STREET
DENVER, COLORADO 80202
(303) 634-4000

DALLAS
5700 BANK ONE CENTER
1717 MAIN STREET
DALLAS, TEXAS 75201
(214) 746-8700

BRUSSELS
AVENUE LOUISE 287, BOX 7
B-1050 BRUSSELS
BELGIUM
011 (322) 646-4910

February 10, 1994

Mr. Gene Atencio
General Manager
Brewer Oil Company Inc.
3200 Candelaria RoadNE
Albuquerque, NM 87107-1907

Re: Pricing of Fuel Contracts By DOD Held Illegal

Dear Mr. Atencio:

We thought you might be interested in the recent decision in *MAPCO Alaska Petroleum, Inc. v. United States*, 27 Fed. Cl. 405 (1992). In that case, the court held that the method DOD uses to price its petroleum fuel contracts is illegal. As a result, the prices DOD paid for fuel since at least 1986 are no longer binding, and suppliers may be entitled to reprice their contracts. Contracts may be repriced based on a supplier's own established catalogue or market price, fair market value, or cost plus a reasonable profit. In many cases, the supplier's recovery can be significant. The *MAPCO* case and a supplier's repricing options are discussed in more detail below. Inasmuch as we represented the supplier in the *MAPCO* case, we would be happy to answer any questions you might have.

## The Illegality

*MAPCO* involved a contract to supply petroleum fuel to the Defense Fuel Supply Center ("DFSC"), which purchases fuel for use by DOD. Under the contract, the price of fuel was to be adjusted upward or downward each month under the terms of an economic price adjustment clause. As provided in the clause, fuel prices were to fluctuate based on changes in indexes published monthly by the Department of Energy in the *Petroleum Marketing Monthly* ("PMM"). These indexes reflected average fuel prices by product and geographic region.

In *MAPCO*, the economic price adjustment clause failed to reflect basic economic changes in the petroleum market. While the price of fuel paid by DFSC under the contract declined thirty-five percent, the price of crude oil to the supplier rose nearly 100%. Facing such margins, the supplier sustained substantial losses, and, thereafter, retained McKenna & Cuneo to file suit against DFSC.

In the suit, we alleged that the supplier's losses resulted because DFSC's economic price adjustment clause violated the Federal Acquisition Regulation ("FAR"). We alleged that an economic price adjustment clause based on an index of market prices—such as the indexes of fuel prices published in the PMM—was prohibited by the FAR. The United States Court of Federal Claims agreed. The court held: "[I]f the [PMM] index violates the procurement regulations, the government cannot, by law, benefit from it. Under such circumstances, the contract is rendered illegal." 27 Fed. Cl. at 408.

**The Remedy**

In its decision, the court in *MAPCO* expressly deferred addressing "the remedy to be afforded plaintiff" as a result of the illegality in DFSC's economic price adjustment clause. Id. at 417. In our view, there are three potential remedies which would permit a supplier to reprice its contracts. A supplier may reprice its contracts based on it own established catalogue or market price for fuel, fair market value, or cost plus a reasonable profit. Each of these remedies permits a supplier to reprice its contracts in a different way and likely with a different result.

1. Catalogue or Market Price

Where an economic price adjustment clause is illegal, the clause may be rewritten or "reformed" to comply with the law. *Beta Systems, Inc. v. United States*, 838 F.2d 1179 (Fed. Cir. 1988). Here, DFSC's economic price adjustment clause most likely would be reformed so that price adjustments were based on the supplier's own established catalogue or market price for related fuels, or perhaps even based on an index of the cost of crude oil. A supplier would be entitled to recover any increase in price resulting from use of the reformed clause.

2. Fair Market Value

Where a clause in a government contract is illegal, a supplier may recover the fair market value of the benefit conferred on the government. *United States v. Amdahl Corp.*, 786 F.2d 387 (Fed. Cir. 1986). In the case of DFSC's economic price adjustment clause, a supplier could recover the fair market value of the fuel supplied to DFSC. A supplier would recover the difference between what it was paid by DFSC and the fair market value for the fuel delivered.

3. Cost Plus a Reasonable Profit

In certain circumstances, a supplier may seek to recover under an illegal contract clause based on a constructive termination for convenience of the government, which permits a supplier to recover its costs and profit. *John Reiner & Co. v. United States*, 325 F.2d 438 (Ct. Cl. 1963), *cert. denied*, 377 U.S. 391 (1964). Under such a recovery, the supplier would obtain the difference between what it was paid by DFSC and its cost of refining fuel delivered, plus a reasonable profit.

LAW OFFICES
McKENNA & CUNEO

Mr. Gene Atencio
February 10, 1994
Page 3

The remedy a supplier may wish to pursue under any particular contract will depend on the market factors that affected performance. For example, many suppliers were adversely affected during Operation Desert Storm. At that time, crude oil prices increased sharply, while the President successfully "jawboned" retail prices down. Thus, suppliers affected by Desert Storm may wish to pursue a remedy that is based on costs rather than on market value. Of course, it may be prudent to pursue more than one remedy in the alternative.

We have found that many suppliers have substantial claims against DFSC as a result of the *MAPCO* case. If you have any questions concerning the *MAPCO* case or your repricing options, please call Keith Burt at (202) 789-7615.

Sincerely,

McKENNA & CUNEO

By ______________________
Allen B. Green
J. Keith Burt

21 ims aw

LAW OFFICES
McKENNA & CUNEO

WASHINGTON, D.C.
1575 EYE STREET, N.W.
WASHINGTON, D.C. 20005
(202) 789-7500

LOS ANGELES
444 SOUTH FLOWER STREET
LOS ANGELES, CA 90071
(213) 688-1000

SAN FRANCISCO
STEUART STREET TOWER
ONE MARKET
SAN FRANCISCO, CA 94105
(415) 267-4000

SAN DIEGO
SUITE 3200, SYMPHONY TOWERS
750 B STREET
SAN DIEGO, CALIFORNIA 92101
(619) 595-5400

DENVER
SUITE 4800
370 SEVENTEENTH STREET
DENVER, COLORADO 80202
(303) 634-4000

DALLAS
3700 BANK ONE CENTER
1717 MAIN STREET
DALLAS, TEXAS 75201
(214) 746-3700

BRUSSELS
AVENUE LOUISE 287, BOX 7
B-1050 BRUSSELS
BELGIUM
011 (322) 646-4910

June 8, 1994

KMI to mail copy of court decision

OK

Vardis J. Vardinogiannis
Motor Oil Hellas Corinth Refineries SA
2 Karageorgi Servias St.
Athens, 105 62
Greece

**Re: Pricing of Fuel Contracts By DOD Held Illegal**

Dear Mr. Vardinogiannis:

We thought you might be interested in the recent decision in *MAPCO Alaska Petroleum, Inc. v. United States*, 27 Fed. Cl. 405 (1992). In that case, the court held that the method DOD uses to price its petroleum fuel contracts is illegal. As a result, the prices DOD paid for fuel since at least 1986 are no longer binding, and suppliers may be entitled to reprice their contracts. Contracts may be repriced based on a supplier's own established catalogue or market price, fair market value, or cost plus a reasonable profit. In many cases, the supplier's recovery can be significant. The *MAPCO* case and a supplier's repricing options are discussed in more detail below. Inasmuch as we represented the supplier in the *MAPCO* case, we would be happy to answer any questions you might have.

## The Illegality

*MAPCO* involved a contract to supply petroleum fuel to the Defense Fuel Supply Center ("DFSC"), which purchases fuel for use by DOD. Under the contract, the price of fuel was to be adjusted upward or downward each month under the terms of an economic price adjustment clause. As provided in the clause, fuel prices were to fluctuate based on published changes in average market prices for fuel in a particular geographic region.

In *MAPCO*, the economic price adjustment clause failed to reflect basic economic changes in the petroleum market. While the price of fuel paid by DFSC under the contract declined thirty-five percent, the price of crude oil to the supplier rose nearly 100%. Facing such

margins, the supplier sustained substantial losses, and, thereafter, retained McKenna & Cuneo to file suit against DFSC.

In the suit, we alleged that the supplier's losses resulted because DFSC's economic price adjustment clause violated the Federal Acquisition Regulation ("FAR"). We alleged that an economic price adjustment clause based on an average, or index, of market prices was prohibited by the FAR. The United States Court of Federal Claims agreed. The court held: "[I]f the index [of average market prices] violates the procurement regulations, the government cannot, by law, benefit from it. Under such circumstances, the contract is rendered illegal." 27 Fed. Cl. at 408.

<u>The Remedy</u>

In its decision, the court in *MAPCO* expressly deferred addressing "the remedy to be afforded plaintiff" as a result of the illegality in DFSC's economic price adjustment clause. Id. at 417. In our view, there are three potential remedies which would permit a supplier to reprice its contracts. A supplier may reprice its contracts based on it own established catalogue or market price for fuel, fair market value, or cost plus a reasonable profit. Each of these remedies permits a supplier to reprice its contracts in a different way and likely with a different result.

1. <u>Catalogue or Market Price</u>

Where an economic price adjustment clause is illegal, the clause may be rewritten or "reformed" to comply with the law. *Beta Systems, Inc. v. United States*, 838 F.2d 1179 (Fed. Cir. 1988). Here, DFSC's economic price adjustment clause most likely would be reformed so that price adjustments were based on the supplier's own established catalogue or market price for related fuels, or perhaps even based on an index of the cost of crude oil. A supplier would be entitled to recover any increase in price resulting from use of the reformed clause.

2. <u>Fair Market Value</u>

Where a clause in a government contract is illegal, a supplier may recover the fair market value of the benefit conferred on the government. *United States v. Amdahl Corp.*, 786 F.2d 387 (Fed. Cir. 1986). In the case of DFSC's economic price adjustment clause, a supplier could recover the fair market value of the fuel supplied to DFSC. A supplier would recover the difference between what it was paid by DFSC and the fair market value for the fuel delivered.

3. <u>Cost Plus a Reasonable Profit</u>

In certain circumstances, a supplier may seek to recover under an illegal contract clause based on a constructive termination for convenience of the government, which permits a supplier to recover its costs and profit. *John Reiner & Co. v. United States*, 325 F.2d 438 (Ct. Cl. 1963), *cert. denied*, 377 U.S. 391 (1964). Under such a recovery, the supplier would obtain the

difference between what it was paid by DFSC and its cost of refining fuel delivered, plus a reasonable profit.

The remedy a supplier may wish to pursue under any particular contract will depend on the market factors that affected performance. For example, many suppliers were adversely affected during Operation Desert Storm. At that time, crude oil prices increased sharply, while the President successfully "jawboned" retail prices down. Thus, suppliers affected by Desert Storm may wish to pursue a remedy that is based on costs rather than on market value. Of course, it may be prudent to pursue more than one remedy in the alternative.

We have found that many suppliers have substantial claims against DFSC as a result of the *MAPCO* decision. If you have any questions concerning the *MAPCO* case or your repricing options, please call Allen Green at (202) 789-7523 or Keith Burt at (202) 789-7615.

Sincerely,

McKENNA & CUNEO

By Allen B. Green

Allen B. Green
J. Keith Burt

CERTIFICATE OF FILING

I hereby certify that on August 15, 2003, a copy of the foregoing document and attached appendix was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Steven J. Gillingham