IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HERMES CONSOLIDATED, INC.<br>Doing business as Wyoming<br>Refining Company,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 02-1460C<br>(Judge Block) |

DEFENDANT'S REPLY TO PLAINTIFF'S SUPPLEMENTAL BRIEF

The Government respectfully submits this reply to plaintiff's supplemental brief in response to the Court's order of August 7, 2003.

1. In our August 15, 2003 brief, we established that plaintiff's ("Wyoming's") knowledge of the Court's decision in MAPCO Alaska Petroleum, Inc. v. United States, 27 Fed. Cl. 401 (1992), is irrelevant to its waiver of its claims, because contractors are presumed to know the content of procurement regulations. The latter principle has been stated so often, it is beyond doubt. E.g. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947); Peters v. United States, 694 F.2d 687, 696 (Fed. Cir. 1982) (holding contractor was charged with knowledge of Forest Service procurement regulation and thus waived its objection to retroactive contract modification). Court decisions such as MAPCO do not create procurement laws or regulations, they only explain them.

In its brief, Wyoming, as an initial matter, does not deny our suggestion that it received actual notice of the MAPCO decision from counsel. See Def. Supp. Br. at 2. We presume that occurred. Attempting to skirt the issue of notice, Wyoming asserts that the Government's argument that Wyoming waived its claims by signing the fuel supply

contracts proves too much and would convert every contract into a voluntary waiver of claims of illegality. Pl. Supp. Br. at 2 n.2. Wyoming is wrong.

As we recognized in our summary judgment briefs, precedent establishes that entering into a contract does not constitute a waiver in certain, limited situations, such as where the contract is contrary to a statute reflecting a strong congressional purpose, or if the contractor protests prior to contract formation. See Def. MSJ at 22, 27; Def. Reply at 30-32. Because neither of those two factors is present here, there was nothing to prevent Wyoming from embracing the agency's market-based economic price adjustment ("EPA") clause, even if that clause is contrary to regulation.

Wyoming also argues that knowledge of law, for purposes of waiver, must be knowledge of an appellate or Supreme Court ruling. Pl. Supp. Br. at 2-3. This is also wrong. Indeed, it defies reason to suggest that statutes and regulations contain no benefits that may be voluntarily waived, unless and until an appellate-level court interprets those statutes and regulations.

To the contrary, the waiver in E. Walters & Co., Inc. v. United States, 217 Ct. Cl. 254, 576 F.2d 362 (1978), was based upon the provision of the Armed Services Procurement Regulation, not a court decision interpreting the regulation. Similarly, in Whittaker Electronic Systems v. Dalton, 124 F.3d 1443, 1446 (Fed. Cir. 1997), the contractor waived the protection of a Defense Acquisition Regulation provision, not of a court decision interpreting the regulation. And, in American Telephone & Telegraph Co. v. United States, 307 F.2d 1374 (Fed. Cir. 2002), the subject of the waiver was a statute enacted only nine days before contract award. In none of these cases, obviously, was an appellate decision necessary to trigger the application of waiver doctrine.

Wyoming cites Beta Systems, Inc. v. United States, 838 F.2d 1179 (Fed. Cir. 1988), for the proposition that knowledge of the law is irrelevant to waiver, noting that the contractor there knew of the illegality, yet the court found no waiver. Pl. Supp. Br. at 7 n.8. That is a non sequitur. A waiver must be both knowing and voluntary. In Beta Systems and its precursor, Chris Berg, Inc. v. United States, 426 F.2d 314 (Ct. Cl. 1970), voluntariness was lacking. The contractors knew of the flaws in the contracts and objected to them prior to award. The courts, in effect, prevented the contracting officers from coercing the contractors to abandon their protests. Here, by contrast, Wyoming actually or constructively knew of the supposed illegality and did not object. Therefore, here, unlike in Beta Systems and Chris Berg, there was a voluntary waiver of known claims.

Wyoming further argues that waiver is precluded by what it calls the Government's "unclean hands." Pl. Supp. Br. at 7-8. That assertion simply ignores the agency's efforts to obtain deviations for its EPA clauses after the MAPCO decision. Wyoming alleges that the Government awarded two post-MAPCO contracts to Wyoming without seeking deviations. As we established in the factual statement accompanying our motion for summary judgment, however, the Director of Defense Procurement initially advised DESC that no deviation was necessary, because she had granted "grandfathered" approval to the EPA clauses prior to the MAPCO ruling. Def. PFF ¶ 18. DESC later reconsidered that advice and resumed seeking deviations. Id. Regardless of whether those deviations are now given legal effect, the agency acted at all times in good faith in attempting to comply with the law.

2. Wyoming offers no new or significant rebuttal to our demonstration, in response to the Court's second question, that no factual hearing on waiver is necessary. See Pl. Supp. Br. at 8-11. Wyoming undeniably understood how the EPA clauses would work, and it is charged with knowledge of the FAR, regardless of its actual knowledge (which it appears it also possessed) of the MAPCO decision. No further facts must be established.

3. In response to the Court's questions regarding laches, we explained that the Government suffered economic prejudice as a result of Wyoming's delay. First, the agency lost the opportunity to award contracts to other offerors under the solicitations that Wyoming won. Second, had Wyoming protested, the agency could have obtained deviations, as it did following MAPCO.

Wyoming contests our showing of economic prejudice, asserting that the agency would simply have awarded "the same illegal contract to another contractor." Pl. Supp. Br. at 13. This misstates the issue. The Government could, and presumably would have taken steps to ensure the legality of the EPA clauses, had any contractor timely questioned their legality prior to award. Wyoming and the other suppliers deprived the Government of this "relatively painless alternative." E. Walters, 576 F.2d at 368. The contractors cannot all evade laches upon the grounds that they all remained silent.

Wyoming's attempts to discount and minimize the significance of the deviations obtained by the agency fail. First, Wyoming asserts that the agency did not seek a deviation in 1984 when a contractor, MAPCO, first complained about an EPA clause. Pl. Supp. Br. at 13. However, although MAPCO requested a different EPA clause, MAPCO

did not question the legality of the agency's EPA clauses in 1984. See Pl. App. 289. Thus, there was no reason to seek a deviation then.

Nor did it appear to make sense to seek a deviation in 1988, when MAPCO submitted its claim. It was reasonable to seek a deviation only after the adverse ruling of this Court in 1992. Wyoming recognizes that the Government sought a deviation immediately (approximately three weeks) after MAPCO was decided, but it dismisses the deviation, asserting it was obtained illegally. We respectfully disagree with the decision of this Court not to give effect to the agency's deviations, but the relevant point is that the agency acted when told by a court that its EPA clause was unauthorized. The Government could have and would have acted much earlier to cure the supposed infirmity, had Wyoming not slept on its claim.

Second, Wyoming does not dispute that the procurements at issue were highly competitive, with the Government receiving total offers far in excess of its requirements. (The excess of potential supply over demand is described in the Government's pre-negotiation briefing memoranda as the percentage of "coverage."). E.g., Pl. App. 198, 203, 208, 214-15, 218-19, 224, 230, 235, 241, 245, 251, 256, 262. Now, if Wyoming were to have its way, the Government would be forced to have "experts" price its contracts instead of a robust market.

Finally, regarding whether this Court may raise the issue of laches *sua sponte*, the two cases Wyoming cites do not concern raising affirmative defenses *sua sponte*. Indeed, courts have raised the defense of laches in appropriate cases such as this one, especially where the plaintiff will have an opportunity to respond. See Carson v. Burke,

178 F.3d 434, 436-37 (6th Cir. 1999); Baylor University Medical Center v. Heckler, 758 F.2d 1052, 1058 (5th Cir. 1985).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Senior Trial Counsel
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 616-2311
Fax: (202) 353-7988

Attorneys for Defendant

OF COUNSEL:

BERNARD A. DUVAL
Counsel

HOWARD M. KAUFER
Trial Attorney
Office of Counsel
Defense Energy Support Center
Ft. Belvoir, VA

September 2, 2003

CERTIFICATE OF FILING

I hereby certify that on September 2, 2003, a copy of the foregoing document was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Steven J. Gillingham