IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

No. 02-466C
(Chief Judge Damich)

---

SUNOCO, INC. and PUERTO RICO SUN OIL COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# PLAINTIFF'S SUPPLEMENTAL BRIEF

---

J. Keith Burt
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006

Attorneys for Plaintiffs,
Sunoco, Inc. and
Puerto Rico Sun Oil Company

*Of Counsel*:

Gary A. Winters
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006

September 12, 2003

**TABLE OF CONTENTS**

**Page**


I. AS A MATTER OF LAW, SUNOCO COULD NOT WAIVE ITS CLAIMS ..... 1

II. KNOWLEDGE OF THIS COURT'S DECISION IN MAPCO CANNOT BE IMPUTED TO SUNOCO SUCH THAT WAIVER APPLIES ..... 2

III. A HEARING IS NOT NECESSARY TO HOLD THAT SUNOCO'S CLAIMS ARE NOT WAIVED, BUT A HEARING IS NECESSARY TO FIND THAT SUNOCO'S CLAIMS WERE WAIVED ..... 7

IV. THE DOCTRINE OF LACHES DOES NOT BAR ANY OF SUNOCO'S CLAIMS ..... 8

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

Page

**Cases**

*ABC, Inc. v. Primetime 24*, 17 F. Supp. 2d 478 (M.D.N.C. 1998), *aff'd in part, rev'd in part on other grounds*, 184 F.3d 348 (4th Cir. 1999) ................2

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992)................11

*AT&T v. United States*, 177 F.3d 1368 (Fed. Cir. 1999) ................2

*Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975)................9

*Beta Systems, Inc. v. United States*, 838 F.2d 1179 (Fed Cir. 1988) ................1, 2

*Calcasieu Refining Co. v. United States*, 2003 WL 22049528 (Fed. Cl. July 31, 2003) ................2, 6

*Cheek v. United States*, 498 U.S. 192 (1991)................5

*Chris Berg, Inc. v. United States*, 426 F.2d 314 (Ct. Cl. 1970) ................2

*Colley v. Conseco Medico Ins. Co.*, 11 Fed. Appx. 487 (6th Cir. 2001) ................8

*Cornetta v. United States*, 851 F.2d 1372 (Fed. Cir. 1988)................9

*Gardner v. Panama R. Co.*, 342 U.S. 29 (1951)................9

*Gromo v. United States*, 1993 U.S. App. LEXIS 29139 (Fed. Cir. Nov. 9, 1993)................4

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ................3

*Hermes Consolidated, Inc. d/b/a Wyoming Refining Co. v. United States*, No. 02-1460C (Aug. 7, 2003) ................1

*Hosey v. ICC*, 1997 U.S. App. LEXIS 34247 (Fed. Cir. Dec. 8, 1997) ................7

*In re Calore Express Co.*, 288 F.3d 22 (1st Cir. 2002)................2

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ................4

*Johnson v. Zerbst*, 304 U.S. 458 (1938) ................2, 4

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) ................1

*LaBarge Products, Inc. v. West*, 46 F.3d 1547 (Fed. Cir. 1995) ................1, 2

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Cases**

*La Gloria Oil & Gas Co. v. United States*, 56 Fed. Cl. 211 (2003)....................................10

*Lorillard v. Pons*, 434 U.S. 575 (1978) ....................................................................3

*MAPCO Alaska Petroleum, Inc. v. United States*, 30 Fed. Cl. 153 (1993) ..........................3

*MAPCO Alaska Petroleum, Inc. v. United States*, 27 Fed. Cl. 405 (1992) ...........2, 3, 5, 10

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)................................5

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ......................................9

*Phoenix Petroleum Co. v. United States*, 1999 WL 521189
(Fed. Cir. July 23, 1999).......................................................................................8

*S.E.R., Jobs for Progress, Inc. v. United States*, 759 F.2d 1 (Fed. Cir. 1985)....................9

*Seaboard Lumber Co. v. United States*, 903 F.2d 1560 (Fed. Cir. 1990)............................2

*Thomas v. Roberts*, 261 F.3d 1160 (11th Cir. 2001)..........................................................3

*Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102 (2d Cir. 2002),
*cert. denied*, 123 S. Ct. 1573 (2003) ..................................................................9

*Trumbull Steel Co. v. United States*, 1 F. Supp. 762 (Ct. Cl. 1932) ..................................5

*United States ex rel. Clark v. Anderson*, 356 F. Supp. 445 (D. Del. 1973),
*rev'd on other grounds*, 502 F.2d 1080 (3d Cir. 1974)..................................................3

*United States v. Golitschek*, 808 F.2d 195 (2d Cir. 1986) ..................................................5

*Wanlass v. General Electric Co.*, 148 F.3d 1334 (Fed. Cir. 1998).............................10, 11

*Yerxa v. United States*, 11 Cl. Ct. 110 (1986), a*ff'd*, 824 F.2d 978 (Fed. Cir. 1987) ..........6

**Statutes**

Pub. L. 103-355, § 2351(a)(1), amending 41 U.S.C. § 605(a) ..........................................4

# PLAINTIFF'S SUPPLEMENTAL BRIEF ON WAIVER

Pursuant to the Court's August 29, 2003 Order, Plaintiffs Sunoco, Inc. and Puerto Rico Sun Oil Company (hereafter "Sunoco"), respectfully submit this Supplemental Brief addressing this Court's decision in *Hermes Consolidated, Inc. d/b/a Wyoming Refining Co. v. United States*, No. 02-1460C (Aug. 7, 2003) (*Wyoming*). Sunoco disputes the suggestion in *Wyoming* that knowledge of *MAPCO* may be imputed, and, in any event, Sunoco engaged in no conduct after *MAPCO* that would constitute a voluntary relinquishment of a known right, as is required to support a waiver defense. Moreover, insofar as there is a suggestion that Sunoco's claims (whether based on pre-*MAPCO* or post-*MAPCO* contracts) can be foreclosed because of its delay in filing them, the doctrine of laches provides the only defense to DESC – and DESC cannot satisfy the element of prejudice that is essential to a finding of laches.

## I. As A Matter Of Law, Sunoco Could Not Waive Its Claims

Sunoco respectfully disagrees with *Wyoming*'s premise that a contractor can waive a challenge to an illegal clause if it had notice of the potential illegality. Rather, Sunoco maintains the position set forth in its prior briefs that the controlling rule of law was set forth by the Supreme Court in *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 81 n.6 (1982), wherein the Court stated: "[I]f it be suggested that Kaiser should not have waited so long to assert its defense [of illegality], the Court has held that 'rules of estoppel will not be permitted to thwart the purposes of statutes of the United States.'" *See also* Sunoco's Reply to Def's. Opp. to Plaintiff's Cross-Mot. For Partial Summ. J. (filed Dec. 6, 2002), at 17-30. Consistent with *Kaiser*, Sunoco rests upon the Federal Circuit's holding in *Beta Systems, Inc. v. United States*, 838 F.2d 1179 (Fed Cir. 1988), that "[i]f the BLS index violated the [F]AR, the government can not, by law, benefit from it." *Id*. at 1185. *Accord LaBarge Prods., Inc. v. West*, 46 F.3d 1547 (Fed. Cir. 1995);

*MAPCO Alaska Petroleum, Inc. v. United States*, 27 Fed. Cl. 405, 416 (1992) (holding that challenge to the illegal price escalation clause could not be waived).[1]

## II. Knowledge Of This Court's Decision In *MAPCO* Cannot Be Imputed To Sunoco Such That Waiver Applies

Waiver is the "intentional relinquishment or abandonment of a *known* right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (emphasis added); *see also Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1563 (Fed. Cir. 1990).[2] Even assuming that *MAPCO* created a right or a privilege that could be relinquished (but see, *infra*, page 3), that right or privilege would have to have been *known* to Sunoco to be waivable. Knowledge of *MAPCO* cannot be imputed to Sunoco, nor, in any event, would such imputation support a finding of waiver.[3]

---

[1] In *Wyoming*, the Court suggested that *Beta* and *LaBarge* do not control because the contractor could not have known of the illegality before entering into the contracts. (Aug. 7, 2003 Order at 12-13). A close reading of those opinions shows that to be incorrect. In *Beta*, the solicitation provided for the use of a particular BLS index, but the contractor proposed using a different BLS index that better captured its raw material costs. The offeror clearly was aware of all of the relevant facts when it elected to enter the contract with the BLS index originally identified in the solicitation, but the Court found no waiver because "[i]f the BLS index violated the [F]AR, the government can not, by law, benefit from it." 838 F.2d at 1185. As this Court recently explained in *Calcasieu Refining Co. v. United States*, 2003 WL 22049528 (Fed. Cl. July 31, 2003), *Beta* stands for the proposition that there is no waiver even though the contractor knew of a possible illegality before entering the contract. *Id*. at *13. Similarly, in *LaBarge*, the plaintiff learned of a potential illegality during another party's bid protest but *before* the contract was awarded to it. 46 F.3d at 1550. Nonetheless, the Court did not find waiver. *Id*. at 1552. *See also Chris Berg, Inc. v. United States*, 426 F.2d 314, 317-18 (Ct. Cl. 1970) (contractor did not waive claim despite entering the contract after government illegally refused to permit contractor to correct its bid). Thus, imputed or actual knowledge of *MAPCO* is immaterial, as a contractor cannot waive a claim of illegality simply by entering into an illegal contract.

[2] Because it requires an intentional act, "silence is insufficient to support a conclusion of waiver as a matter of law," *In re Calore Express Co.*, 288 F.3d 22, 38 (1st Cir. 2002), and "[w]aiver does not occur merely if a plaintiff is aware of the defendant's infringement but fails to act." *ABC, Inc. v. Primetime 24*, 17 F. Supp. 2d 478, 485 (M.D.N.C. 1998), *aff'd in part and rev'd in part on other grounds*, 184 F.3d 348 (4th Cir. 1999).

[3] In supplemental briefs filed in response to the *Wyoming* decision, DESC has asserted that a contractor should be presumed to have knowledge of the FAR and, therefore, should have known that DESC's pricing was illegal even before *MAPCO* was decided. But under that theory, no contract could ever be challenged as contrary to law or public policy, because the mere act of entering the contract would constitute a waiver, all other elements of waiver being presumed. *AT&T III* unambiguously precludes such a result. *AT&T v. United States*, 177 F.3d 1368, 1376 (Fed. Cir. 1999).

**A.**

Knowledge of the law may not be imputed unless the law is "clearly established." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The law is deemed "clearly established" and therefore imputable to government officials when it is set forth in "decisions of the U.S. Supreme Court, [the Appellate] Court, or the highest court of the state from which the case arose." *Thomas v. Roberts,* 261 F.3d 1160, 1170 (11th Cir. 2001). Similarly, courts impute knowledge of the law to Congress as a backdrop to legislation only where the law is well recognized. *See Lorillard v. Pons,* 434 U.S. 575, 580 (1978). In contrast, trial court decisions, which can be inconsistent and can be reversed or superceded, are not imputed because third parties might be subjected to inconsistent standards of conduct. *See generally United States ex rel. Clark v. Anderson*, 356 F. Supp. 445, 451 (D. Del. 1973) (refusing to impute a trial court's construction of a statute "because the highest court in the state had never had an opportunity to rule on the point"), *rev'd on other grounds*, 502 F.2d 1080 (3d Cir. 1974).

Here, *MAPCO* is a decision of a single trial court and cannot in any meaningful sense be described as clearly established law. The *MAPCO* court itself, in a subsequent decision, stated that *MAPCO* is "not binding precedent in any . . . sense," *MAPCO Alaska Petroleum, Inc. v. United States*, 30 Fed. Cl. 153, 154 (1993), and, to this day, DESC disputes the validity of *MAPCO*, avowing to challenge its holding on appeal. Further, *MAPCO* itself expressly reserved and, because of a subsequent settlement left unresolved, the issue of whether there was a remedy for DESC's illegal prices. *MAPCO*, 27 Fed. Cl. at 406. Because *MAPCO* does not represent clearly established law, it could not have established a right or privilege capable of being waived. If it had, then DESC, too, would be bound by knowledge that its prices were illegal and thus deemed to have knowingly flaunted established law in awarding Sunoco's post-*MAPCO* contracts without a FAR deviation.

*Wyoming* recognized that trial court decisions ordinarily are not imputable, but suggested that Wyoming's status as a "sophisticated government contractor" provides a stronger basis for imputing *MAPCO*. (Aug. 7, 2003 Order at 20-21.) However, it is inconsistent with the rule of law to impute the law based on the sophistication of a party (however that might be determined).

Indeed, such a rule could lead to the patently unfair result of parties to the same case having different rules of law imputed to them based solely on their purported sophistication. And it would be particularly egregious to impute knowledge of *MAPCO* to Sunoco when the government – which was a *party* to the *MAPCO* case, and the losing one at that – was not bound by the decision in future litigation and awarded new contracts containing its infirm pricing clause without a proper deviation. Cutting off Sunoco's claims in these circumstances would reward the government for flaunting the law and would create an incentive not to remedy its conduct.

Nor could DESC assert that it is sufficient, for waiver purposes, merely to impute to Sunoco knowledge of what the Court said in *MAPCO* about DESC's prices. Imputation of what a court said is not imputation of a legal right or privilege, the existence of which is a prerequisite for application of waiver. *Johnson*, 304 U.S. at 464. Thus, the standard for applying waiver – voluntary relinquishment of a known right – must be distinguished from the standard for applying the statute of limitations, which is notice to inquire into a potential claim. *See Gromo v. United States*, 1993 U.S. App. LEXIS 29139 at *4-5 (Fed. Cir. Nov. 9, 1993). The latter standard is inapplicable here, as the Congressional waiver of sovereign immunity embodied in the Contract Disputes Act was not conditioned on a statute of limitations when *MAPCO* was decided.[4] Reliance on a "notice to inquire" standard here would impermissibly bar a claim under the very standard Congress elected not to apply at the relevant time, thereby effectively amending the terms of the Congressional waiver of sovereign immunity.

Furthermore, to charge a party with constructive knowledge of mere statements in a single trial court decision, on pain of losing a damages claim worth more than $180 million through operation of a waiver doctrine, does not square with the "traditional conception of fair play and substantial justice" that are at the heart of the constitutional guarantee of due process. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Just as a state cannot

[4] Congress first added a statute of limitations to the CDA in 1994. Pub. L. 103-355, § 2351(a)(1), amending 41 U.S.C. § 605(a).

deprive an individual of property without "notice reasonably calculated, under all the circumstances, to apprise interested parties," *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), a tribunal cannot fashion rules of procedure that result in the elimination of protected property interests by imputing notice in circumstances where that imputation is wholly unreasonable.

**B.**

Where knowledge of a legal right or obligation is a specific element of a legal doctrine (such as waiver) or a specific element of a legal offense, neither the doctrine nor the offense can be established based upon implied knowledge of the law. "[W]hen the law makes knowledge of some requirement an element of the offense, it is totally incorrect to say that ignorance of such law is no excuse or that everyone is presumed to know such law." *United States v. Golitschek*, 808 F.2d 195, 203 (2d Cir. 1986). Thus, where a statute requires a "voluntary, intentional violation of a known legal duty," a showing of "actual knowledge of the pertinent legal duty" is required. *Cheek v. United States*, 498 U.S. 192, 200, 202 (1991) (citation omitted).

In *Trumbull Steel Co. v. United States*, 1 F. Supp. 762 (Ct. Cl. 1932), the plaintiff sought to impute to the government actual knowledge of the law as a basis for alleging that the government asserted a claim against the plaintiff in bad faith. *Id.* at 767. The Court of Claims declined to impute the law or find bad faith, stating: "[t]he presumption of knowledge of the law can not be availed of in order to show that a person asserting a claim had knowledge of its invalidity." *Id.* Just as *Trumbull* required actual knowledge of the law as a prerequisite to finding bad faith, so, too, here the law requires the presence of "a known right" as a prerequisite to finding waiver. *Johnson*, 304 U.S. at 464. Accordingly, a waiver cannot be based on imputed knowledge of *MAPCO*.

**C.**

Even if *MAPCO* could be imputed to Sunoco, Sunoco could not be held to have waived its claims. Imputation of *MAPCO* would carry with it not only knowledge of the Court's finding of illegality, but also knowledge of the Court's holding that, as a matter of law, DESC's violation

of the law could not be waived. *See* 27 Fed. Cl. at 416 ("When a contract clause drafted by the Government is inconsistent with law, whether the appellant inquired, protested, accepted or otherwise assumed any risks regarding the same is not controlling; the impropriety will not be allowed to stand.").

This Court confronted a similar situation in *Yerxa v. United States*, 11 Cl. Ct. 110 (1986), *aff'd*, 824 F.2d 978 (Fed. Cir. 1987). There, the government sought to bar the plaintiff's claims based on laches by imputing knowledge of the law prior to the filing of suit. *Id*. at 120. In response, the plaintiff noted that the law (subsequently reversed) barred the government from raising a laches defense during much of the period of alleged delay. *Id*. at 119. Thus, the plaintiff asserted that, if the Court were to impute knowledge of its claims, the Court must also impute knowledge that any delay in filing suit would be excused because the government could not assert a laches defense. *Id*. The Court agreed, stating that "if knowledge of the law which is unfavorable is imputed, no sound reason exists to fail to impute knowledge that is favorable." *Id*. As in *Yerxa*, if imputation extends to the "negative effects" of the law here, it must also extend to those aspects of the law that are to Sunoco's "advantage."

The reasonableness of a contractor's reliance on *MAPCO*'s no-waiver pronouncement could not be subject to meaningful dispute. Prior to *AT&T V*, DESC itself conceded to this Court that it could not raise a credible waiver defense to its illegal prices. App. 1235-1236 ("I wasn't satisfied that we had the grounds to pursue a waiver argument;" "I'm not in a position to file any motion on waiver . . . I'm not maintaining the defense."). So, too, this Court recently observed in *Calcasieu Refining Co. v. United States*, 2003 WL 22049528 (Fed. Cl. July 31, 2003), that, prior to *AT&T V*, the "cases enforce a strict ruling against waiver when the contractor is the beneficiary of the offending clause." *Id*. at *14. If both DESC and this Court agreed that, prior to *AT&T V*, DESC did not have a waiver defense, then, *a fortiori*, Sunoco could conclude that waiver was not relevant.

## III. A Hearing Is Not Necessary To Hold That Sunoco's Claims Are Not Waived, But A Hearing Is Necessary To Find That Sunoco's Claims Were Waived

The Court in *Wyoming* sought guidance on whether a hearing was necessary on the issue of waiver. For the reasons discussed above, we submit that even Sunoco's actual knowledge of *MAPCO* would not support a finding of waiver, because the mere announcement of the *MAPCO* decision did not create a "right" waivable by Sunoco. Therefore, it is not necessary to hold a hearing to determine whether Sunoco actually knew of *MAPCO*.

### A.

If, however, this Court holds that Sunoco's actual knowledge of *MAPCO* could support a waiver, no such finding can be made on the current record. The unrebutted facts establish that Sunoco was not aware of DESC's illegal prices, and that it would not have entered any of the contracts had it known of DESC's violation of the law. Thomas Bradley, Sunoco's former Manager of Aviation Fuels, states that he was "not aware that the prices in [the] contracts were illegal," and that "if DESC had informed [him] that the prices in the military fuel contracts were illegal, [he] would not have allowed Sunoco to enter into the contracts with illegal prices." App. 1750. This evidence precludes any finding on the present record that Sunoco had knowledge sufficient to support a waiver of its claims. *See generally Hosey v. ICC*, 1997 U.S. App. LEXIS 34247, at *7 (Fed. Cir. Dec. 8, 1997) (the "intention to make a waiver and the extent of [a parties'] knowledge of his rights are factual" questions).

Alternatively, if the Court determines that it cannot resolve the issue of waiver on the present record, a hearing would be necessary to determine the actual state of Sunoco's knowledge and intent. Sunoco would be entitled to present evidence on the issue of what it knew, when it knew it, what it intended by its actions or inactions, and why it waited until after this Court's decisions in *Pride* and *Barrett* to submit its claims to the contracting officer.[5]

[5] The *Wyoming* Court's discussion of imputation suggests that the question whether to impute knowledge of *MAPCO* may be a factual issue that depends on the reasonableness of imputing a trial court decision to a particular contractor. (Aug. 7, 2003 Order at 21.) Although we disagree that imputation can turn on the sophistication of the party to be charged (see, *supra*, at 3-4), if the Court so holds, we submit that a hearing is necessary before the Court can impute knowledge of

*(Footnote cont'd on next page)*

**B.**

Finally, Sunoco alleges that DESC knowingly misrepresented the legality of its prices in negotiating contracts. Complaint ¶¶ 39-41. Such misrepresentation, if established at trial, would bar a waiver defense on the grounds of unclean hands. *Cf. Phoenix Petroleum Co. v. United States*, 1999 WL 521189, at *3 (Fed. Cir. July 23, 1999) (barring government's res judicata defense because of unclean hands). Moreover, the record is bereft of evidence explaining why DESC continued to use its illegal clause in the Sunoco contracts even after *MAPCO*, a decision of which it was clearly aware. Discovery and trial are necessary on these issues as well before Sunoco could be found to have waived its claims.

## IV. <u>The Doctrine Of Laches Does Not Bar Any Of Sunoco's Claims</u>

The Court in *Wyoming* suggested that the contractor's entry into two post-*MAPCO* contracts "tilt[s] the scale measuring plaintiff's conduct toward waiver rather than laches because, to the court, plaintiff's dilatory conduct appears willful." (Aug. 7, 2003 Order at 21). But to the extent Sunoco's alleged "dilatory conduct" might bar its claim, that depends exclusively on whether DESC can establish the defense of laches, not waiver; the latter requires an affirmative act indicating an intent to abandon a right or privilege, and mere inaction does not qualify. *See Colley v. Conseco Medico Ins. Co.*, 11 Fed. Appx. 487, 491 (6th Cir. 2001) ("conduct that does not express any intent to relinquish a known right is not a waiver, and a waiver cannot be inferred by mere silence.") To succeed on a laches defense, it is not enough for DESC to show that Sunoco delayed bringing its claims. Rather, DESC also must show prejudice to itself.

---

*(Footnote cont'd from previous page.)*

*MAPCO* to Sunoco. The present record does not contain any evidence establishing that it was unreasonable for Sunoco not to know of *MAPCO*.

It is hornbook law that a party must show prejudice in order to bar a suit or a counterclaim that was delayed for a lengthy period of time. "Where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief." *Gardner v. Panama R. Co.*, 342 U.S. 29, 31 (1951). The Federal Circuit has hewed closely to this rule. Allegedly stale claims are not barred "unless the offended party has been unmistakably prejudiced by the delay in the assertion of the claim." *S.E.R., Jobs for Progress, Inc. v. United States*, 759 F.2d 1, 9 (Fed. Cir. 1985).[6]

Even if Sunoco had actual knowledge of *MAPCO* on the day it was issued, that would not bolster a laches defense. The delaying party's knowledge of its claim does not alter the requirement of showing prejudice. For example, in *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975), the Supreme Court held that the defendant was required to show prejudice before the plaintiffs' five-year delay in seeking back pay would bar their claims. *Id*. at 423-24. The plaintiffs knew of the factual and legal basis for their claims for back pay at the beginning of the five-year period. *Id*. In *Cornetta v. United States*, 851 F.2d 1372 (Fed. Cir. 1988), the Federal Circuit, sitting *en banc*, held that the plaintiff's seven-year delay in suing for military reinstatement and back pay was not barred unless the government could show prejudice, even though the plaintiff knew he had a claim as soon as he was discharged. *Id*. at 1378. Sunoco's delay in suing is no more "willful" than that of the workers in *Albemarle* or the officer in *Cornetta*, and in neither of these cases was laches or waiver found due to delay alone. Moreover, a party seeking to bar a suit due to delay must prove *actual* prejudice rather than rely on a presumption of prejudice. *Cornetta*, 851 F.2d at 1378. If Sunoco were held to have waived its claims simply because *MAPCO* came down, the requirement of showing actual prejudice due to delay would be read out of the law.

---

[6] The same is true in other legal contexts. *See, e.g., National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002) (delay in filing discrimination claim); *Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102, 105 (2d Cir. 2002) (delay in filing arbitration), *cert. denied*, 123 S. Ct. 1573 (2003).

Here, DESC cannot prevail on a laches defense because it cannot show economic prejudice resulting from Sunoco delay in bringing its claims. In its supplemental brief following the *Wyoming* decision, DESC argued that prejudice arises from the fact that it awarded contracts to Wyoming at Wyoming's offer price and decided to forego awarding contracts to other bidders; presumably, DESC would say the same about Sunoco. But this is little more than an assertion that DESC would have awarded the same illegal contract to another contactor if Sunoco had not accepted them – hardly the type of prejudice cognizable to support waiver. In addition, DESC has conceded that its intent was to pay fair market value for the fuel it purchased, App. 556, and paying Sunoco the fair market value it seeks here is no different than paying fair market value to a different contractor at the time of the contracts. In any event, DESC's asserted loss of the ability to contract with a different party does not stem from Sunoco's delay in bringing suit, as this loss occurred when the contracts were entered. *See Wanlass v. General Electric Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998) (defendant must show that "the *delay* resulted in material prejudice or injury") (emphasis added) (citation omitted).

DESC also contended that if the contractor had protested "anytime prior to submitting its belated claims," it could have obtained a deviation or revised the EPA clause. (DESC's Supp. Br. in *Wyoming* at 4-5.) The record belies that. DESC did *not* seek a deviation or revise its clause when MAPCO Alaska Petroleum first objected to DESC's pricing clause as "coerced" in 1984, App. 561, or when MAPCO later filed a claim with the contracting officer challenging the legality of DESC's price in 1988. 27 Fed. Cl. at 407. Only *after* DESC lost *MAPCO* in 1992 did it seek a deviation, and then it did so illegally. *See La Gloria Oil & Gas Co. v. United States*, 56 Fed. Cl. 211, 219 (2003). As for revising the EPA clause, DESC *never* did that, despite facing challenges to the clause from contractors such as Barrett and Pride throughout the mid-1990s. Clearly, any failure to protest by Sunoco did not result in economic prejudice to DESC.

DESC contended in its supplemental brief following *Wyoming* (and presumably will contend here) that it needs no further discovery or hearing to establish economic prejudice as a basis for its laches defense. Thus, DESC has put forward its best evidence of economic

prejudice, and, for the reasons discussed above, cannot show prejudice resulting from delay. Because DESC must "establish that there was no genuine issue of material fact about the delay or the prejudice" in order to prevail on laches, that issue cannot be resolved in favor of DESC at this time. *Wanlass*, 148 F.3d at 1337.[7]

**CONCLUSION**

For the foregoing reasons, knowledge of *MAPCO* may not be imputed to Sunoco such that waiver would apply, waiver may not be found without a trial, and laches does not apply and may not be found without a trial.

Sunoco respectfully submits that a hearing would be of assistance to the Court in resolving the issue of waiver.

Respectfully submitted,

s/ J. Keith Burt
J. Keith Burt
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3208 (Phone)
(202) 263-5208 (Fax)

Attorneys for Plaintiffs,
Sunoco, Inc. and Puerto Rico
Sun Oil Company

*Of Counsel:*

Gary A. Winters
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, DC 20006

September 12, 2003

[7] We note that, in addition to showing prejudice, DESC also must also show that Sunoco's delay was "unreasonable and unexcused." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc). DESC cannot make that showing. No statute of limitations applied to these claims, as Congress did not impose a limitations period on CDA claims (and then only prospectively) until 1994. Moreover, the substantive law underlying Sunoco's claim had not been finally determined, as the *MAPCO* decision left unresolved whether there was a remedy for DESC's illegal prices. In these circumstances, it was not unreasonable for Sunoco to wait to bring its claims until the law was clarified in *Barrett*.