IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SUNOCO, INC., | ) | |
| And | ) | |
| PUERTO RICO SUN OIL COMPANY, | ) | |
| Plaintiffs, | ) | No. 02-466C (Chief Judge Damich) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

## JOINT STATUS REPORT

Pursuant to the Court's September 20, 2005 Order, Plaintiffs, Sunoco, Inc. and Puerto Rico Sun Oil Company (collectively "Sunoco"), and Defendant, the United States, respectfully submit the following Joint Status Report. The parties set forth their respective positions separately, below.

### I. Sunoco's Statement Of Position

#### A. Sunoco's Identification Of The Principal Issues

##### 1. Count I – Illegality

(a) Did DESC violate FAR § 16.203 by using indexes that were not market-based references to set prices under the fuel contracts?[1]

(b) Did DESC violate FAR § 15.802(b) [currently codified at FAR §15.402(a)] by not awarding the fuel contracts at "fair and reasonable prices?"

[1] DESC asserts that this issue should be stated as follows: Were the references at issue market-based references and, therefore, explicitly permitted by FAR 16.203-1 and, if not, are they illegal?

(c) Did DESC violate the Office of Federal Procurement Policy Act and its implementing and predecessor regulations as well as DFAR pt. 219 by auctioning the award of fuel contracts?

(d) Did DESC violate the equal protection component of the fifth amendment's due process clause by extending bidding preferences to minority-owned fuel suppliers?

**2. <u>Count II – Misrepresentation</u>**

In awarding and administering the fuel contracts, did DESC misrepresent or otherwise fail to disclose that:

(a) the indexes it used to set prices were not designed or intended to be used for that purpose and did not reflect fair market value;

(b) its contracts did not provide for payment of fair market value and did not provide for payment of fair and reasonable prices;

(c) it worked with DOE to determine how PMM was published; or

(d) it violated law and regulation?

**3. <u>Count III – Breach Of Contract</u>**

In awarding and administering the fuel contracts, did DESC breach the fuel contracts:

(a) by using indexes to set prices that were not designed or intended to be used for that purpose and which did not reflect fair market value;

(b) by failing to pay fair market value and by failing to pay fair and reasonable prices;

(c) by failing to negotiate and administer the contracts in good faith; or

(d) by violating law and regulation?

4. **Count IV – Implied-In-Fact Contract**

Did DESC's violation of law and regulation in administering and awarding the fuel contracts render the price terms of the fuel contracts invalid and unenforceable and are the price terms therefore replaced by an implied-in-fact contract to pay fair market value?

5. **Count V – Failure Of Consideration And Frustration Of Purpose**

Was there a failure of consideration and was the purpose of the fuel contracts frustrated as a result of:

(a) DESC's use of indexes to set prices that were not designed or intended to be used for that purpose and that did not reflect fair market value;

(b) DESC's failure to pay fair market value and failure to pay fair and reasonable prices;

(c) DESC's failure to negotiate and administer the contracts in good faith; or

(d) DESC's violation of law and regulation?

6. **Count VI – Mistake**

Were the fuel contracts entered or performed as a result of a mistake concerning whether:

(a) DESC's indexes were designed or intended to be used to set prices and reflected fair market value;

(b) the contracts provided for payment of fair market value and payment of fair and reasonable prices; or

(c) DESC violated law and regulation?

**7. Count VII – Taking**

Did DESC effect a taking without just compensation in violation of the fifth amendment?

**8. Counts I Through VII**

Was Sunoco paid the fair market value of the fuel it delivered under the fuel contracts and, if not, what is the amount of the underpayment that Sunoco is entitled to recover?[2]

**B. Sunoco's Proposal For Further Proceedings**

Sunoco proposes that discovery proceed on all issues. Sunoco proposes the following discovery schedule:

1. Discovery shall begin immediately. The requirements for disclosure in Rule 26(a), the limitations on the number of depositions in Rule 30(a)(2)(A), and the limitations on the number of interrogatories in Rule 33(a) shall not apply.

2. After one year of discovery, the parties shall exchange expert witness reports. Three months shall be allowed for expert witness depositions and associated discovery.

3. Within three months of completion of expert witness depositions, the parties shall submit any responsive expert witness reports. To the extent requested by either party, depositions concerning responsive expert witness reports shall be completed within three months.

## II. Defendant's Statement Of Position

The Federal Circuit has held that the escalation clause at issue here, including its use of the Petroleum Marketing Monthly ("PMM") as a reference, was legal. Tesoro HI Corp. v. United States, 405 F.3d 1339 (2005). Hermes now attempts to minimize the centrality of illegality to its claims – yet, those were the claims presented to the contracting officer. The claims not considered by the Federal Circuit require either no discovery or minimal discovery at best, the exact extent of

[2] DESC asserts that this issue should be stated as follows: Must the Government pay "fair market value and, if so, was Sunoco paid the fair market value of the fuel it delivered under the fuel contracts and, if not, what is the amount of the underpayment that Sunoco is entitled to recover?

which should be determined by a RCFC 56(f) motion. Accordingly, defendant proposes to file a dispositive motion and would be happy to discuss the grounds for such a motion in detail at a status conference.[3] The other judges of this Court who have examined this question have agreed and established briefing schedules without discovery. Flint Hills v. United States, 02-462 (Judge Williams); Hermes v. United States, No. 02-1460C, and El Paso v. United States, No. 02-1094C (Judge Block).

Sunoco's central claim, still present in the proffered amended complaint, is that the contracts violated FAR 16.203-3. This was rejected by the court of appeals. The remaining claims fall into three broad categories: (1) allegations of violations of law in contract formation; (2) allegations that plaintiff's expectations were not met in performance of the contracts; and (3) a takings claim. The Court should promptly dispose of all of them upon our motion.

**A. Contract Formation Counts**

The Category 1 claims are asserted in Count 1. There, plaintiff alleges that the Government's use of the PMM and other EPA clauses violated FAR 15.802(b) (currently 15.402(b)), an allegation that was not contained in the claims to the contracting officer or the original complaint; (ii) DESC violated the Office of Federal Procurement Policy ("OFPP") Act, 41 U.S.C. § 423, and implementing regulations, by awarding the contracts via illegal auctioning techniques, at least after July 16, 1989; (iii) DESC violated Part 219 of the Department of Defense FAR supplement ("DFARS") by improperly soliciting and awarding contracts set aside for small and small disadvantaged businesses; and (iv) DESC violated the Constitution's Equal Protection

[3] We see no value in addressing the various pieces of "additional evidence" cited by Sunoco. Suffice it to say our dispositive motion will demonstrate that the allegations are all unfounded or irrelevant. Of course, in response to our motion, Hermes could pursue an RCFC 56(f) motion for additional discovery.

Clause by extending bidding preferences to minority-owned businesses that were not narrowly tailored to further a compelling Government interest.

In addition to our specific responses below, the bases for Sunoco's arguments in Counts ii-iv above were apparent on the face of the solicitations and should have been raised before the close of bidding. Sunoco's failure to timely protest should preclude it from raising these issues now, many years after the contracts were awarded and performed. North Carolina Div. of Servs. for the Blind v. United States, 53 Fed. Cl. 147, 165-66 (2002). In any event, these are also subject to our defense of waiver.

FAR 15.402(b), which requires the Government to purchase supplies and services at fair and reasonable prices, is intended to protect the government – not contractors. See All Phase Environmental, Inc., B-292919.2, 2004 CPD ¶ 62, 2004 WL 437540 (Comp.Gen.) at *6. Otherwise, no contract would be binding and contractors could routinely file and litigate claims that "the price was unfair." Sunoco seeks to void the terms in its numerous agreements providing that it would be paid its bid price plus an adjustment, and seeks, instead, payment of something it calls "fair market value." However, plaintiff neither defines that term nor identifies any source of law that entitles it to be paid anything other than the contract price. That is not surprising, as plaintiff never – during performance of the contracts, during its continued, successful efforts to win more contracts, or even in its certified claim – complained that the prices were simply unfair. Indeed, this belated request for the Court simply to reprice these ancient contracts without legal underpinning or standards underscores how free-floating plaintiff's theory is, and why it must be tested by a dispositive motion.

Sunoco's OFPP claim is that DESC's small business set-aside program violates the restriction upon disclosing proprietary or source selection information. 41 U.S.C. § 423(b)(3).

Similarly, its DFARS Part 219 claim alleges that, in awarding partial small business set-asides, DESC failed to properly solicit or re-solicit large businesses. These claims are unlikely to involve disputed evidence concerning the program terms at issue and it is difficult, in any event, to see how plaintiff, a winning bidder, could prove, absent speculation, that it was "harmed in [a] concrete way contemplated by the FAR." See LaBarge Prods., Inc. v. West, 46 F.3d 1547, 1556 (Fed. Cir. 1995).

Sunoco's equal protection claim is grounded in Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995), which held that racial preferences in Federal contracting are subject to strict scrutiny. This claim fails because the Equal Protection Clause is not money-mandating and "do[es] not trigger Tucker Act jurisdiction in the courts." Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988). (Adarand was an action for injunctive relief brought in a district court.) Even if not dismissed, the Adarand claim raises only legal issues and it appears that, as a successful bidder, plaintiff suffered no actionable harm.

### B. Contract "Performance" – (Counts 2 Through 7)

The Category 2 counts are all based upon the allegation in Count 1 that the pricing clauses were illegal. For example, in Count 2 (Misrepresentation), plaintiff alleges that the Government misrepresented the contracts as complying with law and that the price publications referenced in the EPA clauses were not intended for that purpose. However, the Federal Circuit has ruled that the contracts were legal, and plaintiff's post hoc critique of the price publications cannot render the use of those publications "illegal," or form a basis for a misrepresentation claim. The complaint does not even allege, in any event, who misrepresented what to whom or how plaintiff, a sophisticated oil company, could have been confused about the price publications.

Count 3 (Breach of Contract) is virtually identical to Count 2. Count 4 (Implied in Fact Contract), meanwhile, appears to state a theory of remedy when price terms are stricken from a contract. That theory, however, is irrelevant, inasmuch as the price terms are legal and cannot be

stricken. Moreover, the internal Government documents cited by plaintiff simply do not establish the mutual intent necessary to create an implied contract. See D&N Bank v. United States, 331 F.3d 1374 (Fed. Cir. 2003).

Count 5 (Failure of Consideration and Frustration of Purpose) alleges that DESC's violation of law constituted a material breach of contract, and that flaws in the price publications caused a failure of consideration. However, the Federal Circuit has found that DESC did not violate the law, so there was no breach. We frankly cannot understand the consideration argument, but it appears to be purely legal.

Finally, Count 6 (Mistake) essentially mirrors Count 2 by alleging a purportedly mistaken "intent" that the contract's references to price publications would result in legal and fair prices. This does not state a cause of action. First, the Federal Circuit has declared the contracts legal. Second, a mistake claim requires proof of a mistaken belief about an existing "fact" that was essential to the bargain. "A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake'" of that nature. Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (quoting Restatement (Second) § 151). Predictions about how prices might develop are not "facts" susceptible to "mistake," and it is impossible to believe that sophisticated oil producers misunderstood the price publications, in any event. The parties relied upon their own analyses to determine whether the clauses at issue made business sense. Given plaintiff's many years of experience with the escalators – and its failure to complain about the years of payments it collected thereunder – there is no prospect that it can prove a material mistake.

### C. Takings

Count 7 should be promptly dismissed because, now that the Federal Circuit has held that the EPA clauses to which plaintiff agreed were authorized, there is no room to allege that the

Government took fuel without paying just compensation. See, e.g., Sun Oil Co. v. United States, 215 Ct. Cl. 716, 572 F.2d 786, 818 (1978).

**D. Conclusion**

At bottom, plaintiff's theory of recovery appears to be that DESC should have used different escalators,[4] although we have no idea why, or which ones, or upon what legal theory plaintiff may now challenge a legal clause years after contract formation.[5] Whether to use one market-based EPA clause or another was within DESC's business discretion. Alleged differences among escalators, which is the general tenor of plaintiff's evidentiary snippets, does not establish an abuse of discretion. Indeed, nothing plaintiff has proffered or alleged suggests that the choice of the PMM as a market reference over many years rose to the level of illegality. Accordingly, nothing precluded plaintiff from agreeing to the terms offered, and it is bound by its choice.

To the extent that plaintiff is complaining not that the DESC clause was illegal per se, but somehow acted inconsistently with contract standards, then it was obliged to document that fact and present a claim upon that basis to the contracting officer. It has not done so. Therefore, the Court may not entertain any such claim now.[6] Finally, the court should deny plaintiff's request for additional discovery. The Government has produced tens of thousands of pages of documents in the years of EPA clause litigation. As plaintiff's list of "[a]dditional [e]vidence" amply

---

[4] The "evidence" Sunoco cites primarily relates to PMM. Sunoco used Platts to price its own claim.

[5] In that regard, this case differs from Beta Systems, Inc. v. United States, 838 F.2d 1179 (Fed. Cir. 1988), where relief was predicated on an EPA clause that failed to comply with the applicable Defense Acquisition Regulation provision.

[6] We would not expect there to be such evidence, because, as we established earlier in this litigation, Sunoco never complained. Moreover, because the PMM is comprehensive, composed not of a sample but of all the data of all suppliers legally mandated to supply data, it is very difficult to imagine how, month after month and year after year, the data could always be wrong.

demonstrates, plaintiff has been a direct or indirect beneficiary of those efforts. We know of nothing left to produce. In any event, given that we request a schedule for a motion to dismiss, discovery is inappropriate.

We have reviewed Sunoco's "reply" below, and we submit that it demonstrates – by its length, if nothing else – that full briefing is warranted. Briefing is undeniably preferable to continuing to debate the merits of the case in a status report.

## III. Sunoco's Reply To Defendant's Statement Of Position

### A. Sunoco's Reply To Defendant's Proffered Dispositive Motion

DESC seeks to avoid any discussion or discovery of the evidence showing that DESC knew that its indexes did not reflect fair market value but used them to set prices anyway. Instead, DESC proffers a dispositive motion that, on its face, is not well-founded and ignores or misstates the better part of Sunoco's complaint.

DESC reaches beyond its grasp in asserting that *Tesoro* precludes Sunoco's illegality as applied claim because the Federal Circuit found that DESC's prices were "legal in all respects."[7]

---

[7] In *Williams Alaska Petroleum, Inc. v. United States*, No. 02-705C (Fed. Cl.), the Court articulated this illegality "as applied" claim by distinguishing it from a claim of *per se* illegality:

> I thought the situation is one in which the question was may the government use[] a market-based-index, and I said of course it can. . . . But that says nothing about . . . whether the index provides an accurate measure of the market it's attempting to draw data from.
>
> If, for example, it was an index of apples and orange and bananas, no one could conceivably argue, well, it's there in the contract and therefore it's law. No. You may have a right to use a market-based index, *but the index itself must be representative of the market it's purporting to represent.* That's the issue that I see is still there to be decided.

(Transcript of Nov 18, 2003 Proceedings at 24-25 (emphasis added).) Consistent with the Court's characterization in *Williams*, the parties here have not yet developed the record concerning whether

In *Tesoro*, the Federal Circuit addressed the narrow question whether DESC's prices "were *per se* illegal" because "prices could only be adjusted based on changes in the individual contractor's prices." *Id.* at 1342, 1344. DESC cannot credibly maintain that the Federal Circuit held, in the absence of any record, that DESC's prices were legal even if DESC knew that its indexes were not "market based" and used them anyway. *See Tesoro*, 405 F.3d at 1343. These are issues DESC previously conceded were not before the Federal Circuit, and DESC may not now be heard to argue that the Federal Circuit decided them in its favor.[8] Furthermore, DESC's assertion that this Court cannot review, even for an abuse of discretion, DESC's knowing and false certification of price reasonableness under FAR § 15.802(b) is not consistent with the law,[9] nor is DESC's defense of its illegal auction[10] and minority price preferences.[11]

---

the indexes DESC used to set prices properly reflected the market value for fuel or, therefore, whether those indexes complied with FAR § 16.203.

[8] In *Tesoro*, DESC conceded before the Federal Circuit that the issue whether PMM properly measured market value was not before the court. In its principal brief in *Tesoro*, DESC responded to criticisms of the *amicus* The American Petroleum Institute about the "'suitability' and 'appropriateness'" of PMM as a measure of market prices, stating: "*we do not regard this appeal as a referendum upon the appropriateness or suitability of particular price references – especially not with conflicting affidavits on that point.*" (Brief of Defendant-Appellee at 25) (emphasis added).

Moreover, even if the Federal Circuit somehow could be deemed to have found that the indexes DESC used in *Tesoro* to set prices in Hawaii, Alaska and Wyoming reflected market value in those markets, DESC fails to explain how those findings could be applied to other markets in other parts of the country such as those at issue in this case. Nor does DESC explain how, consistent with due process, third parties such as Sunoco here, with the right to present their own factual record in their own cases, could be bound by the Federal Circuit's alleged factual finding in a different case.

[9] *See* September 12, 2005 Joint Status Report at 15 n.16.

[10] *See* September 12, 2005 Joint Status Report at 15 n.17.

[11] *See* September 12, 2005 Joint Status Report at 15 n.18.

DESC misstates the facts when it seeks to dismiss Sunoco's allegations of misrepresentation, breach of contract, failure of consideration,[12] and mistake[13] as premised only upon assertions of illegality. As Sunoco's statement of the issues, above, makes clear, these allegations go far beyond illegality. DESC states no meaningful basis upon which it intends to move for dismissal of these extensive and detailed allegations, nor does DESC articulate a reason why Sunoco is not entitled to discovery concerning them.

Finally, DESC asserts that, because Sunoco did not file a bid protest before entering the contracts, Sunoco waived its allegations of illegality. The Federal Circuit rejected this assertion in *LaBarge Prods., Inc. v. West*, 46 F.3d 1547, 1552-53 (Fed. Cir. 1995). Moreover, this Court has already held that, at a minimum, DESC's waiver defense raises issues of fact requiring discovery. *Sunoco, Inc. v. United States*, 59 Fed. Cl. 390, 397-99 (2004).[14]

### B. <u>Sunoco's Statement Of Discovery Necessary To Respond To Defendant's Proffered Dispositive Motion</u>

DESC's description of its proffered motion is somewhat scattershot, but in essence DESC asserts that it will seek to dismiss all of Sunoco's claims based on whatever "over the wall"

[12] In response to DESC's assertion that it "cannot understand the consideration argument," Sunoco invites the Court to consider the parties' September 12, 2005 Joint Status Report at 16 n.19.

[13] DESC missteps in asserting that Plaintiff does not allege a mistake with respect to an existing fact when the contracts were entered. Contrary to DESC's assertion, Plaintiff alleges, *inter alia*, that the parties were mistaken concerning whether DESC's indexes were designed or intended to report changes in fair market value, whether DESC's indexes in fact reflected fair market value when the contract was entered, and whether DESC's indexes suffered undisclosed design deficiencies such as an index number problem. These are classic allegations of factual mistake with respect to which Plaintiff is clearly entitled to discovery.

[14] For a discussion of DESC's waiver defense in the context of Sunoco's traditional contract claims, Sunoco invites the Court to consider the parties' September 12, 2005 Joint Status Report at 17-18. If, as this Court has held, consideration of DESC's waiver defense to Sunoco's claims of illegality requires discovery, then, *a fortiori*, discovery is required with respect to DESC's assertions of waiver with regard to Sunoco's contract claims. *Sunoco*, 59 Fed. Cl. at 397-99.

assertions it can develop between now and when DESC files its motion. DESC has elsewhere described its tactics as an attempt to force claimants such as Sunoco to provide all of their evidence to DESC. This is an entirely inappropriate use of a motion for summary judgment, particularly where DESC knows that it lacks the evidence to prevail on summary judgment. (For example, DESC states no credible basis upon which it could prevail against Sunoco's mutual mistake claims prior to discovery of the intent of both parties in entering the fuel contracts.)

If DESC is nonetheless permitted to file its proffered motion prior to completion of discovery, Sunoco requires at least the following discovery to respond:

**1. Count I – Illegality**

(a) **Proffered Ground For Motion:** DESC did not violate FAR § 16.203 by failing to use market-based references to set prices under Sunoco's fuel contracts.

**Necessary Discovery:** Sunoco requires full written and deposition discovery concerning DESC's indexes and prices in the fuel contracts.

(b) **Proffered Ground For Motion:** DESC did not violate FAR § 15.802(b) by failing to award Sunoco's fuel contracts at "fair and reasonable prices."

**Necessary Discovery:** Sunoco requires full written and deposition discovery concerning DESC's indexes and prices in the fuel contracts.

(c) **Proffered Ground For Motion:** DESC did not violate the Office of Federal Procurement Policy Act and its implementing and predecessor regulations as well as DFAR pt. 219 by auctioning the award of fuel contracts.

**Necessary Discovery:** Full written and deposition discovery concerning DESC's negotiation and award of fuel prices for small businesses at all delivery locations where Sunoco and small businesses were both evaluated for award of fuel contracts.

(d) **Proffered Ground For Motion:** DESC did not violate the equal protection component of the fifth amendment's due process clause by extending bidding preferences to minority-owned fuel suppliers.

**Necessary Discovery:** Full written and deposition discovery concerning the negotiation and award of prices to minority-owned suppliers at all delivery locations where Sunoco and minority-owned suppliers were both evaluated for award of fuel contracts.

2. **Count II – Misrepresentation**

**Proffered Ground For Motion:** DESC did not misrepresent or otherwise fail to disclose material facts in negotiating, awarding and administering the contracts.

**Necessary Discovery:**

(a) Full written and deposition discovery concerning negotiation, award and performance of the fuel contracts.

(b) Full written and deposition discovery concerning DESC's prices and indexes in the fuel contracts.

3. **Count III – Breach Of Contract**

**Proffered Ground For Motion:** DESC did not breach the fuel contracts.

**Necessary Discovery:**

(a) Full written and deposition discovery concerning negotiation, award and performance of the fuel contracts.

(b) Full written and deposition discovery concerning DESC's prices and indexes in the fuel contracts.

4. **Count IV – Implied-In-Fact Contract**

**Proffered Ground For Motion:** There is no implied-in-fact contract to pay fair market value.

**Necessary Discovery:**

(a) Full written and deposition discovery concerning negotiation, award and performance of the fuel contracts.

(b) Full written and deposition discovery concerning DESC's prices and indexes in the fuel contracts.

5. **Count V – Failure Of Consideration And Frustration Of Purpose**

**Proffered Ground For Motion:** There was no failure of consideration or frustration of the purpose of the contacts.

**Necessary Discovery:**

(a) Full written and deposition discovery concerning negotiation, award, and performance of the fuel contracts.

(b) Full written and deposition discovery concerning DESC's prices and indexes in the fuel contracts.

6. **Count VI – Mistake**

Proffered Ground For Motion: Sunoco and DESC did not enter or perform the fuel contracts as a result of a mistake.

Necessary Discovery:

(a) Full written and deposition discovery concerning negotiation, award and performance of the fuel contracts.

(b) Full written and deposition discovery concerning DESC's prices and indexes in the fuel contracts.

7. **Count VII – Taking**

**Proffered Ground For Motion:** There was no taking.

**Necessary Discovery:** No discovery is required in addition to that set forth above.

Respectfully submitted,

s/ J. Keith Burt
J. Keith Burt
Mayer, Brown, Rowe & Maw, LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3208 (Phone)
(202) 263-5308 (Fax)

Attorneys for Plaintiffs,
Sunoco, Inc. and Puerto Rico Sun Oil Company

*Of Counsel:*

Gary A. Winters
Mayer, Brown, Rowe & Maw, LLP
1909 K Street, N.W.
Washington, D.C. 20006

Dated: October 11, 2005

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ STEVEN J. GILLINGHAM
STEVEN J. GILLINGHAM
Senior Trial Counsel
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 616-2311 (Phone)
(202) 353-7988 (Fax)

Attorneys for Defendant,
The United States

*Of Counsel:*

BERNARD A. DUVAL
Counsel
HOWARD. M. KAUFER
DONALD S. TRACY
Assistant Counsel
Office of General Counsel
Defense Energy Support Center
Fort Belvoir, VA 22060

Dated: October 11, 2005