IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 02-466C
(Chief Judge Damich)

SUNOCO, INC. AND PUERTO RICO SUN OIL COMPANY,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS AND SUPPLEMENTAL APPENDIX

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

STEVEN J. GILLINGHAM
Senior Trial Counsel
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 616-2311
Facsimile: (202) 353-7988

Attorneys for Defendant

OF COUNSEL:

BERNARD A. DUVAL
Counsel
Defense Energy Support Center
Fort Belvoir, VA 22060
HOWARD M. KAUFER
Assistant Counsel
Office of General Counsel
Defense Energy Support Center
Fort Belvoir, VA 22060

December 15, 2005

**TABLE OF CONTENTS**

**PAGE(S)**

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I. Sunoco's Contracts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. DESC's Small Business Set-Aside Program . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II. DESC's EPA Clauses Are Authorized By FAR 16.203-1 . . . . . . . . . . . . . . . . . . 11

A. EPA Clauses Need Not Be Based Upon Plaintiffs' Own Prices . . . . . . . . . 12

B. Sunoco's Fair Market Value Allegations Do Not State A Cause Of Action . 16

C. Sunoco's FAR 15.802(b) Allegation Does Not State A Cause Of Action . . . 17

D. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

III. Sunoco's Alternative Illegality Theories In Counts II-VI Must Be Dismissed . . 21

A. Count II (Misrepresentation) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

B. Count III ("Breach of Contract") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

C. Count IV ("Implied-In-Fact Contract") . . . . . . . . . . . . . . . . . . . . . . . . . . 22

D. Count V ("Failure of Consideration and Frustration of Purpose") . . . . . . . . 23

E. Count VI ( Mistake) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

1. Mutual Mistake . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

2. Unilateral Mistake . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IV. Count VII (Takings Allegation) Fails To State A Claim . . . . . . . . . . . . . . . . . . . 28

V. Sunoco's Complaints Concerning DESC's Small Business Program Must Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

A. The Court Lacks Jurisdiction To Entertain The Fifth Amendment Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

B. DESC's Small Business Program Is Not Improper . . . . . . . . . . . . . . . . 31

VI. Waiver and Estoppel Bar Sunoco's Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

**INDEX TO THE SUPPLEMENTAL APPENDIX**

Declaration of John R. Walker . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DESC Clauses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

FAR Part 15, 15.610 Written or oral discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

52.219-7 Notice of Partial Small Business Set-Aside (Oct. 1995) . . . . . . . . . . . . . . . . . . . . . . 10

Notice of Evaluation Preference for Small Disadvantaged Business Concerns (Jun. 1997) . . . . 11

Notice of Partial Small Business Set-Aside With Preferential Consideration for Small Disadvantaged Business Concerns Clause (May 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 14

DFSC Memo, re: Base Reference Date for EPA References Tied to Petroleum Marketing Monthly (PMM), dated January 6, 1986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Defense Logistics Agency Inter-Office Memorandum, dated December 2, 1987 Subject: Economic Price Adjustment in the Domestic Bulk Program . . . . . . . . . . . . . . 20

Excerpt of Deposition of Lawrence Ervin, dated December 1, 2003 . . . . . . . . . . . . . . . . . . . . . 27

## TABLE OF AUTHORITIES

**Case** **Page(s)**

Am. Tel. & Tel. Co. v. United States,
307 F.3d 1374 (Fed. Cir. 2002) . . . . . . . . . . passim

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 10

Atlas Corporation v. United States,
895 F.2d 745 (Fed. Cir. 1990), cert. denied, 498 U.S. 811 . . . . . . . . . . 24

Barrett Refining v. United States,
242 F.3d. 1055 (2001) . . . . . . . . . . 23

Bernaugh v. United States,
38 Fed. Cl. 538 (1997), aff'd, 168 F.3d 1319 (Fed. Cir. 1998) . . . . . . . . . . 28

Brookhard v. Janis,
384 U.S. 1 (1966) . . . . . . . . . . 34

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 10

DGS Contract Services, Inc. v. United States,
43 Fed. Cl. 227 (1999) . . . . . . . . . . 32

Dairyland Power Cooperative v. United States,
16 F.3d 1197 (Fed. Cir. 1994) . . . . . . . . . . 24

Dale Ingram, Inc. v. United States,
201 Ct. Cl. 475 F.2d 1177 (1973) . . . . . . . . . . 26

Durable Metals Prods., Inc. v. United States,
27 Fed. Cl. 472 (1983) . . . . . . . . . . 20

Dynalectron Corp. v. United States,
4 Cl. Ct. 424, 428 (1984), aff'd, 758 F.2d 665 (Fed. Cir. 1984) . . . . . . . . . . 30

E. Walters & Co., Inc. v. United States,
217 Ct. C 576 F.2d 362 (1978) . . . . . . . . . . passim
Eastport Steamship Corp. v. United States,

178 Ct. C 372 F.2d 1002 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Everett Plywood Corp. v. United States,
227 Ct. Cl. 651 F.2d 723 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Far West Fed. Bank v. OTS,
19 F.3d 1358 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Florida Rock Indus. Inc. v. United States,
791 F.2d 893 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Fraass Surgical Mfg. Co., Inc. v. United States,
215 Ct. C 571 F.2d 34 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Freightliner Corp. v. Caldera,
225 F.3d 1361 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Glopak Corporation v. United States,
12 Cl. Ct. 96,102 (1987), aff'd, 851 F.2d 334 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Gould, Inc. v. United States,
935 F.2d 1271 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gratz v. United States,
25 Cl. Ct. 411, 420, aff'd, 985 F.2d 583 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 29

Gregory Lumber Co. v. United States,
11 Cl. Ct. 489 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Hermes v. United States,
58 Fed. Cl. 409 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Hughes Communications Galaxy, Inc. v. United States,
271 F.3d 1060 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Hume v. United States,
21 Ct. Cl. 328, 330 (1886), aff'd., 132 U.S. 406 (1889) . . . . . . . . . . . . . . . . . . . . . . . . 27

Inupiat Community of the Arctic Slope v. United States,
230 Ct. C 680 F.2d 122 cert. denied, 459 U.S. 969 (1982) . . . . . . . . . . . . . . . . . . . . . . 30

J&E Salvage v. v. United States,
37 Fed. Cl. 256 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

John Massman Contracting Co., v. United States,
23 Cl. Ct. 24, 32 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

LaBarge Prods., Inc. v. West,
46 F.3d 1547 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Larson v. Domestic & Foreign Commerce Corp.,
337 U.S. 682 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

LeBlanc v. United States,
50 F.3d 1025 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Liebherr Crane Corp. v. United States,
810 F.2d 1153 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Ling-Temco-Vought, Inc. v. United States,
201 Ct. Cl. 135 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

MAPCO Alaska Petroleum, Inc. v. United States,
27 Fed. Cl. 405 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Montana v. United States,
124 F.3d 1269 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Morrison-Knudsen Co. v. United States,
170 Ct. Cl. 712 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Mullenberg v. United States,
857 F.2d 770 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Perpetual Financial Corp. v. United States,
61 Fed. Cl. 126, 138 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Reservation Ranch v. United States,
39 Fed. Cl. 696 (1997), aff'd, 217 F.3d 850 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 34

Rochman v. United States,
27 Fed. Cl. 162 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Seaboard Lumber Co. v. United States,
903 F.2d 1560 (Fed. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Seaboard Lumber v. United States,
308 F.3d 1283 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Sherwood v. Walker,
66 Mich. 568, 33 N.W. 919 (1887) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Short Bros., PLC v. United States,
65 Fed. Cl. 695 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Spalding & Sons, Inc. v. United States,
28 Fed. Cl. 242 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Sun Oil Co. v. United States,
215 Ct. Cl. 716, 769-70, 572 F.2d 786, 818 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 29

Sweats Fashions, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tabb Lakes, Ltd. v. United States,
10 F.3d 796 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Tesoro et al. v. United States,
405 F. 3d 1339 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Tony Downs Foods Co. v. United States,
530 F.2d 367 (Ct. Cl. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Trauma Service Group v. United States,
104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Connolly,
16 F.2d 882 (Fed. Cir. 1983), cert. denied, 104 S. Ct. 1414 (1984) . . . . . . . . . . . . . . . . 30

United States v. Hamilton Enterprises,
711 F.2d 1038 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

United States v. Mitchell,
445 U.S. at 538 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Whittaker Electronic Systems v. Dalton,
124 F.3d 1443 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**STATUTES and REGULATIONS**

10 U.S.C. §2323 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15 U.S.C. § 644 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15 U.S.C. § 772 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

41 U.S.C. § 423 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

FAR 15.402(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

FAR § 15.610 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

FAR § 15.802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

FAR 15.804-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

FAR 16.103(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

FAR 16.104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

FAR 16.203-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

FAR 16.203-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

FAR 19.502-3(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

FAR 52.219-7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SUNOCO, INC.<br><br>and<br><br>PUERTO RICO SUN OIL COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 02-466C<br>(Chief Judge Damich) |

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

The United States respectfully requests that the Court dismiss paragraph 43 of the Amended Complaint ("Compl."), pursuant to RCFC 12(b)(1), and the remainder of the complaint, pursuant to RCFC 56(b). In the alternative, defendant respectfully requests that the Court dismiss the remainder of the complaint pursuant to RCFC 12(b)(6). In support of this motion, we rely upon the Amended Complaint, the following brief, the accompanying proposed findings of uncontroverted fact ("PFF"), the exhibits submitted in conjunction with our first motion for summary judgment, and the Supplemental Appendix attached to this brief ("SA").[1]

**STATEMENT OF THE ISSUES**

1. Whether the contracts at issue were illegal because their Economic Price Adjustment ("EPA") clauses were based upon "indexes rather than on Plaintiffs' own established fuel prices," "were not market-based, were not designed or intended to used to set or adjust

[1] "Def. Exh." refers to the exhibits contained in the appendix to our first motion for partial summary judgment. "Pl. App." refers to pages of the appendix accompanying Plaintiffs' cross-motion for partial summary judgment.

prices, and did not reflect at least the fair market value of military fuel," as alleged in Count I of the Amended Complaint.

2. Whether the allegation contained in Count II that the "PMM [Petroleum Marketing Monthly] indexes were not designed or intended to be used to set or adjust prices and which did not reflect at least the fair market value of military fuel" states a claim upon which relief can be granted.

3. Whether the allegation contained in Count I that the EPA clauses violate FAR 15.402(a) states a claim upon which relief can be granted.

4. Whether if the answer to Issue 2 and 3 are in the negative, Counts II-VI, which state alternative theories of relief based upon the same allegations concerning the PMM and are labeled as "Misrepresentation," "Breach of Contract," "Implied-In-Fact-Contract," "Failure of Consideration and Frustration of Purpose," and "Mistake," also should be dismissed for failing to state a claim upon which relief can be granted.

5. Whether the allegation contained in Count VII, that the contracts at issue effected a taking, states a claim upon which relief can be granted.

6. Whether this Court has jurisdiction to entertain the allegation contained in paragraph 42 that DESC violated "the equal protection component of the fifth amendment's due process clause by extending to minority-owned businesses bidding preferences."

7. Whether DESC used "prohibited auction techniques, whereby DESC awarded contracts to bidders that agreed to match other bidders' prices," and that it improperly solicited and awarded "portions of the procurements set aside for small businesses together with those for large businesses." Compl. ¶¶ 41-42.

8. If the answers to any of the above are in the affirmative, whether Sunoco has waived any applicable benefit, or is estopped from litigating their applicability.

## STATEMENT OF THE CASE

### I. Nature Of The Case

This case arises from 40[2] fuel supply contracts between Sunoco, Inc. and Puerto Rico Sun Oil Co. (collectively "Sunoco") and the Defense Energy Support Center ("DESC"). Compl. ¶¶ 6, 32-33.[3] Sunoco complains that the EPA clauses contained in DESC fuel contracts were illegal and that DESC's fuel acquisition program was marred by various other improprieties. Thus, Sunoco concludes, it is "entitled to recover based on the fair market value of the fuel it delivered to DESC." Compl. ¶ 46.

In an earlier phase of this litigation, we moved for summary judgment upon Sunoco's allegation that the DESC clauses at issue violated the Federal Acquisition Regulation ("FAR") ("illegality argument"). We also demonstrated that Sunoco had waived any right it might have had to EPA clauses other than the ones contained in its contracts, and was estopped from litigating the point. This case then was stayed pending the outcome of an interlocutory appeal in Tesoro et al. v. United States, 405 F. 3d 1339 (Fed. Cir. 2005), *petition for reh'g. en banc denied*, No. 04-5064 (Fed. Cir. Aug. 22, 2005) ("Tesoro"), which involved identical issues. In

---

[2] Plaintiffs originally filed claims on 41 contracts. However, one of those claims involved a firm fixed-price contract, that is, a contract that did not contain an EPA clause. The claim under that contract was dismissed earlier in this litigation. See Sunoco, Inc. v. United States, 59 Fed. Cl. 390, 396-97 (2004).

[3] Until 1998, DESC was called the Defense Fuel Supply Center ("DFSC"). We use the current name.

Tesoro the Federal Circuit held that DESC's PMM-based EPA clause was legal, and declined to reach the waiver issue.

In this case, the Court has permitted Sunoco to file an amended complaint and defendant to file this motion. Sunoco has since filed its amended complaint, which includes what we consider to be immaterial factual allegations concerning the PMM and to assert a cause of action pursuant to FAR 15.402(a) (contracting officer's duty to assure prices offered are fair and reasonable). See Compl. ¶ 40.

## SUMMARY OF MATERIAL FACTS

The evidence set forth in the accompanying proposed findings of uncontroverted fact is sufficient to establish the Government's right to a dismissal of the complaint. Generally, the proposed findings describe the market-based nature of the EPA clauses at issue, DESC's long, controversy-free use of those clauses, Sunoco's failure to object to the use of, or application of, the clauses, until many years after performing the contracts, and Sunoco's long history and familiarity with these clauses. They also demonstrate that DESC's small business program is consistent with the FAR.

I. Sunoco's Contracts

Plaintiff Sunoco, Inc. is a Pennsylvania multinational corporation headquartered in Philadelphia; plaintiff Puerto Rico Sun Oil Company is a subsidiary. Compl. ¶¶ 1-2. The parent company ("Sunoco") is among the largest refiners and sellers of petroleum in the United States, with 35 petroleum terminals, a total refining capacity of approximately 730,000 barrels per day, and more than 4,000 retail stations. PFF 1. It is also one of the world's oldest oil companies,

having been incorporated as Sun Oil Company of Ohio in 1890. Id. For fiscal year 2001, Sunoco reported revenues of more than $14 billion. Id.

Between 1984 and 2000, Sunoco performed at least 40 contracts, and delivered nearly 2.7 billion gallons of three jet fuels known as “JP-4,” “JP-5,” “JP-8,” and Jet A jet fuel, and “F-76” diesel fuel. PFF 4. Sunoco was paid in excess of $1.5 billion pursuant to the contracts at issue here. PFF 4. The contracts contained DESC-drafted price adjustment clauses. PFF 11, 14. In essence, for each petroleum product to be supplied, offerors proposed a "base price" per gallon, which the agency used for evaluation purposes. PFF 10. Offerors also acknowledged a "reference price," which, since the early 1980s, has been taken from one of two widely-available petroleum price publications. PFF 10, 11, 14. After award, the base price per gallon was periodically adjusted up or down, by the exact number of fractions of a cent that the published reference price had risen or fallen since the last adjustment. PFF 10. Thus, changes in the contract prices were linked to changes in the prices of similar products. PFF 19; Exh. 3 ¶ 9; Exh. 4 ¶¶ 5-6.

DESC began using EPA clauses during the 1973 oil embargo. At that time, the agency allowed offerors to choose between basing price adjustments upon either published prices of refined products, or actual crude oil costs. DESC began using market-prices exclusively in the early 1980s, primarily because the prior practice made it difficult to compare offers for evaluation purposes. PFF 9.

The contracts awarded to Sunoco from 1984to 1994, contained EPA clauses providing for price adjustments based upon monthly average sales prices of refined petroleum products, by region, as reported by the Department of Energy ("DOE"), Energy Information Administration,

in its publication the Petroleum Marketing Monthly. PFF 11. The PMM is compiled from transaction price reports that refiners, including Sunoco, are required by law to submit to DOE monthly. PFF 12; 15 U.S.C. § 772.

Pursuant to the PMM-based EPA clause, suppliers' per-gallon prices were adjusted monthly. PFF 12. For example, for a 1993 contract, Sunoco bid a base price of 60.242 cents per gallon for JP-4, tied to a PMM-based reference price, supplied by DESC, of 63.342 cents per gallon for August 1992. Def. Exh. 11. Assuming hypothetically that, for the first month in which Sunoco delivered fuel, the reference price rose .10 cents higher, the contract price for that first month would have been the base price plus the same .10 cents per gallon.

In 1995, DESC adopted as its EPA escalator a widely-used industry publication, Platts Oilgram Price Report ("Platts"). PFF 14. DESC did so because, despite substantial advantages offered by the PMM, including the fact that it was a report of actual sale prices, the report of those prices was not available until three months after the sales took place. The EPA clauses, however, required monthly payments and, therefore, price adjustments. To accommodate this gap between the payment date and the availability of the data necessary to calculate the economic price adjustment applicable to those payments, DESC made an estimated interim payment and then reconciled the payment with the amount properly due when the applicable PMM sales data became available. PFF 13-14, 16-25. Thus, Sunoco’s suggestion that the change from PMM demonstrates that a PMM-based clause was illegal or not market-based is sheer hyperbole. See, e.g., Compl. ¶¶ 19, 21-22.

Sunoco never objected to any version of the EPA clause, or to any of the hundreds of price adjustments made pursuant to the clauses. PFF 29. Indeed, it was not until Sunoco

submitted its first certified claim in 2001 – approximately 17 years after the first contract was awarded, and nine years after MAPCO, 27 Fed. Cl. 405, was decided – that Sunoco alleged that the EPA clauses were illegal. Compl. ¶¶ 32-33; PFF 30.

II. DESC's Small Business Set-Aside Program

In accordance with 15 U.S.C. § 644 and FAR Part 19, DESC's Bulk Fuels Program solicitations included partial small business set-asides. Beginning in 1988, pursuant to 10 U.S.C. § 2323, DESC solicitations also included an evaluation preference of up to 10 per cent for small disadvantaged business concerns. DESC solicitation clauses I237.05, Notice of Evaluation Preference for Small Disadvantaged Business Concerns, and I237.06, Notice of Partial Small Business Set-Aside with Preferential Consideration for Small Disadvantaged Business Concerns, set forth the operation of these programs. PFF 27.

The clauses provided that the set-aside price would be the highest price the Government would pay for the non-set-aside portion of the fuel required for a location, and allowed negotiation with small business offerors to obtain that price. DESC did not provide small business concerns with either the identity or the prices of other offerors. Rather, the match price comprised the fuel price the Government would pay plus a figure for transportation costs to the destination for which the small business might offer. PFF 28.

## SUMMARY OF THE ARGUMENT

This case presents the incredible claim that a sophisticated oil contractor that performed at lease 40 DESC contracts over 16 years, without complaint, now is entitled to damages due to alleged defects in those contracts. Remarkably, Sunoco does not even allege that it

misunderstood the clauses at issue, or that the clauses did not operate as their plain language suggests they would.

In Tesoro, 405 F.3d 1339, the Federal Circuit explicitly rejected Sunoco's stubborn contention that the clauses were illegal because they were based upon "indexes rather than on Plaintiffs' own established fuel prices" or that DESC's PMM-based EPA clause is prohibited by the FAR. Tesoro also effectively disposes of Sunoco's miscellaneous complaints concerning the EPA clauses. In Tesoro, the court held that, in order to pass muster under FAR 16.203-1, EPA clauses need only be based upon "industry-based prices," which "may be established by references to either a catalog or market sources independent of the manufacturer or vendor." Id. at 1347. Yet, in the guise of various legal theories, Sunoco contends that the EPA clauses are suspect because they were not "designed or intended" to set prices and did not "reflect at least the fair market value of military fuel." These allegations do not invoke any part of the legal test for EPA clauses and, therefore, fail to state a claim upon which relief can be granted. In fact, DESC's EPA clauses pass muster under Tesoro, because they are based upon "market sources."

Sunoco's three categories of auxiliary complaints fare no better. The first category, comprising Counts II-VI, is a repackaging of the clause-illegality argument into various common law theories, "Breach of Contract," "Implied-In-Fact-Contract," "Failure of Consideration and Frustration of Purpose," and "Mistake." All are based upon the legally-unfounded premise that DESC owed a duty to Sunoco to utilize price references that were "designed or intended to be used to set or adjust prices," that the references "reflect at least the fair market value of military fuel," and that DESC pay "fair market value." None is grounded in the language of Sunoco's actual contracts or the Federal Circuit's standard for assessing the legality of EPA clauses. All

are thinly-disguised, back-door attempts to alter the legal standard for EPA clauses, established and applied in Tesoro. Accordingly, none of these states a cause of action upon which relief may be granted. To the extent they might, Sunoco simply fails to demonstrate the elements of proof for those causes of action.

The second complaint category, Count VII, is Sunoco's allegation that DESC's possession of the fuel purchased pursuant to the contracts at issue effected a taking. However, it is well-established that, when the Government action at issue is subject to a contract claim, no Fifth Amendment takings may lie. Accordingly, Count VII, too, should be dismissed.

The third category (contained in Count I) focuses upon a variety of alleged peccadillos concerning DESC's small business program -- that: (1) DESC's small business set-aside program violates the FAR's anti-auction provisions, and its prohibition against "awarding portions of the procurements set aside for small business together with those for large businesses"; and (2) DESC's small disadvantaged business program violates the equal protection component of the Fifth Amendment. It is not clear how these complaints affected Sunoco or could support the wholesale contract repricing that Sunoco seeks. In any event, this Court has no jurisdiction to address an equal protection claim and Sunoco's vague allegations do not demonstrate that DESC's small business set-aside program violates the law.

Finally, even if Sunoco's various allegations are not subject to dismissal for the reasons summarized above, we still are entitled to summary judgment, because, years ago, Sunoco abandoned any rights the FAR, the Fifth Amendment, or small business regulations might have conferred. Sunoco also forfeited any right it might have had to test those rights in litigation when it waited as many as 17 years to file the necessary claims. Indeed, in a case involving far

less egregious circumstances, this Court has already held as much. Hermes II, 58 Fed. Cl. 409. Although the Hermes Court did not explicitly address Sunoco's other causes of action, there is no principled basis for treating them differently.[4]

**ARGUMENT**

I. Standard of Review

Summary judgment is warranted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." RCFC 56(c); accord Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1999). A factual issue is material if it could affect the outcome of the case in light of the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute exists only if a reasonable trier of fact could find for the nonmoving party. Id. The movant need not "produce evidence" of the absence of factual disputes; it need only "point[] out" that the record does not support the other party's case. Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

We have moved to dismiss some counts of the Amended Complaint pursuant to RCFC

[4] In our earlier motion for partial summary judgment, we demonstrated that, in order to maintain a cause of action against the Government, Sunoco must allege and prove that it was injured, damaged, or harmed by the Government's allegedly wrongful action and that Sunoco had failed to do so. Def. MSJ at 30-31. We do not repeat that argument here, because the dismissal of the complaint we seek here would moot the argument. However, should the Court deny this motion, we respectfully request that the Court address that argument before permitting any further discovery. Our earlier motion for summary judgment also explained that, if Sunoco could establish entitlement to recovery in quantum valebant, the Court should dismiss those portions of the complaint that rest upon the presumption that Sunoco may disregard its original offer prices, as Sunoco's certified claims did. See Def. Reply and Opposition to Pl's. Cross Motion for Partial Summary Judgment at 26-29. We do not repeat that position either. However, should the Court deny this motion, we respectfully request that that argument be considered before any discover concerning remedy is permitted.

12(b)(6), which permits the dismissal of an allegation that fails to state a claim upon which relief may be granted. Dismissal upon this ground is appropriate whenever "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

In making this determination, the Court must accept the factual allegations set forth in the complaint as true and "indulge in all reasonable inferences in favor of the nonmovant." Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991).[5]

II. DESC's EPA Clauses Are Authorized by FAR 16.203-1[6]

In Count I, Sunoco presents several theories concerning the illegality of DESC's EPA clauses: (1) that the clauses were illegal because there were not based upon "Plaintiffs' own established fuel prices" (Compl. ¶ 38); (2) that the clauses were illegal because they were "not market-based, were not designed or intended to be used to set or adjust prices, and did not reflect at least the fair market value of military fuel" (Compl. ¶ 39); and (3) that the contracts were awarded in violation of FAR § 15.802(b) (currently codified at FAR 15.402(a)) (contracting officer's duty to review offers for price reasonableness). (Compl. ¶ 40)

As explained below, Sunoco waived whatever benefits it imagines these regulations conferred and now, is estopped by its years of inaction from litigating those benefits. However,

[5] However, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." Rochman v. United States, 27 Fed. Cl. 162, 168 (1992)(quoting 2A Jeremy C. Moore, Moore's Federal Practice, ¶ 12.07 [2.-5] (2d ed. 1992)).

[6] In our first motion for partial summary judgment, we explained that, although FAR 16.203-1 specifically authorized the clauses at issue, it was Sunoco's burden to demonstrate that the clauses were prohibited, not our burden to demonstrate specific authority. See Def. MSJ at 17, 26-27. We have not repeated the position here. However, should the Court determine that the clauses at issue are not specifically authorized, we respectfully request that it consider that position.

even if that is not so, Sunoco is not entitled to relief, as these clauses are legal pursuant to Tesoro. Indeed, Sunoco's illegality allegations, which attempt to redefine the standard for EPA clauses, do not even state a claim upon which relief can be granted, because they invoke standards for illegality not found in the law.

A. EPA Clauses Need Not Be Based Upon Plaintiffs' Own Prices

FAR 16.203-1 provides as follows:

> A fixed-price contract with economic price adjustment provides for upward and downward revision of the stated contract price upon the occurrence of specified contingencies. Economic price adjustments are of three general types:
>
> (a) Adjustments based on established prices. These price adjustments are based on increases or decreases from an agreed-upon level in published or otherwise established prices of specific items or the contract end items.
>
> (b) Adjustments based on actual costs of labor or material. These price adjustments are based on increases or decreases in specified costs of labor or material that the contractor actually experiences during contract performance.
>
> (c) Adjustments based on cost indexes of labor or material. These price adjustments are based on increases or decreases in labor or material cost standards or indexes that are specifically identified in the contract.

FAR Section 16.203-1(a) describes two types of "established" price adjustments -- those based upon "published" prices and those based upon "otherwise established" prices – but does not define those terms. However, FAR 16.203-4(a), and (b) ("Clauses"), which prescribe standardized clauses for "adjustments based on established prices," specifically refer to the use of established prices for supplies that have either established "catalog" or "market prices."

Since January 1997, FAR 16.203-4 has not explicitly defined the terms "catalog or

market price."[7] However, its predecessor made clear that the terms "established catalog or market price" referred to the definitions found in FAR 15.804-3. The predecessor stated that, before using a "published or otherwise established price" EPA clause, the contracting officer must determine that "the requirement is for . . . .supplies that have an established catalog or market price verified using the criteria in FAR 15.804-3" (emphasis added). Section 15.804-3 (c), in turn, defined "established catalog prices" as "prices (including discount prices) recorded in a catalog, price list, schedule, or other verifiable and established record that (A) are regularly maintained by the manufacturer or vendor; and (B) are published or otherwise available for customer inspection." FAR 15.804-3(c)(1) (1995). It defined "established market prices" as "current prices that (I) are established in the course of ordinary and usual trade between buyers and sellers free to bargain and (ii) can be substantiated by data from sources independent of the manufacturer or vendor." Id. § 15.804-3(c)(2) (emphasis added).

In Tesoro, the Federal Circuit, reviewing the PMM-based EPA clause at issue here, held that FAR 15.804-3 supplies the meaning for "established prices," which need not be, as Sunoco asserts, the contractor's own prices:

> Although the term "established price" is not expressly defined in FAR § 16.203, the definition of the term in FAR § 15.804-3 is incorporated by reference. FAR § 15.804-3 defines "established prices" to include contractor-specific prices, namely "established catalog prices," and industry-based prices, namely "established market prices." As indicated by FAR § 16.203-2 and FAR § 15.804-3, the policy behind requiring use of "established prices" is to avoid contracts subject to the operational whims of individual contractors.

Tesoro, 405 F.3d at 1347.

---

[7] This provision was deleted from the FAR effective January 2, 1997.

Rejecting the contractor's theory (Sunoco's here), the court held explicitly that the theory that "FAR 16.203-3 requires that adjustments be based only on changes in the prices charged by individual contractors eviscerates the regulatory meaning of the term 'established prices' and the policy reasons for using it." Id. Summarizing, the court explained that: "According to the interplay of all four sections of FAR § 16.203, a 'contractor's established price' may be established by reference to either a catalog or market sources independent of the manufacturer or vendor." Id. at 1347.

The court did not stop there, however. Instead, it explicitly considered whether DESC's PMM-based EPA clause was an "established prices" clause contemplated by FAR § 16.203-1 and held that it was – foreclosing consideration of the question anew. Indicating that it was indeed considering the legality of the PMM-based EPA clause, the court recited the PMM's various features as well as the parties' contentions concerning the effect of those features upon the viability of the PMM-based EPA clause. The court's specific recitations concerning the PMM included the following.

- The court's statement of the certified question as "Did DESC establish the price of fuel in violation of law by employing economic price adjustment clauses indexed to PMM?" Tesoro, 405 F.3d at 1342 (emphasis added).

- "The reference prices to which the price adjustments were tied were drawn from market publications. Until June 23, 1994, DESC drew its EPA reference prices from the market publication known as the [PMM]." Id. at 1341.

- The court's observation that the PMM is published by DOE and reports "monthly average sales figures for specified fuels for five fuel regions known as Petroleum Administration Defense Districts ('PADDS')." Id.

- "All refiners, including Tesoro and Hermes, are required by law to submit monthly sales data to the DOE, which then compiles the data to report the monthly average sales prices per PADD for various products." Id.

- The observation that the complaints in both suits claimed that "DESC's actions were per se illegal because the PMM-based EPA clause was inconsistent with the applicable section of the FAR." Id. at 1342.

- The observation that the contractors argued that "DESC's use of an EPA clause tied particularly to the PMM does not comport with the express requirements of FAR § 16.203-3 . . . Relying on the language of MAPCO, Appellants claim that a PMM-based EPA clause fails to address either of the "mischiefs" specified in FAR § 16.203-3, because the PMM is an "amalgamation" of petroleum sales that does not reflect the product, the market, or the price for the military fuel Tesoro and Hermes supplied." Id. at 1348 (emphasis added).

- A review of the MAPCO analysis of the PMM itself, which was distinct from MAPCO's analysis of whether, in general, EPA clauses must be based upon the contractor's prices. See MAPCO, 27 Fed. Cl. at 410-11.

- The appellate court's review included MAPCO's dissection of the PMM, including the fact that it was an "amalgamation of the previous month's sales data" and, as such, did not comport with the dictionary definition of "established." The review also recited MAPCO's conclusion ("In sum, the index at issue is neither the contractor's, nor does it reflect an established price"), which underscored the fact that the appellate court and the MAPCO court considered the general question of whether an "established prices" EPA clause could be market based as well as whether DESC's PMM clause was an "established prices" clause. Id. at 1347 (emphasis added)..

Following these recitations, the court concluded, in unmistakable language, that the PMM-based EPA clause was, indeed, a permissible EPA clause:

> Because we conclude that DESC's use of a market-based EPA clause tied to the PMM was authorized under the FAR, we do not reach the other issues raised in the certified questions . . . . Our holding that the use of the PMM-based EPA clause was authorized under the statute moots the issue of [waiver].
>
> * * *
>
> For the foregoing reasons, we hold that the Court of Federal Claims erred in holding that DESC's use of a PMM-based EPA clause was not authorized under the FAR.

Id. at 1348-49 (emphasis added).

The appellate court's conclusion should have come as no surprise. The PMM is based

upon sales data from a large number of refiners and sellers of petroleum products. It reports averages of the actual prices sellers have charged and buyers have paid for various petroleum products in different states and regions of the country. PFF 12. Because the prices are established in actual sales between a number of sellers and buyers, they clearly are "market prices," and satisfy the FAR 15.804-3 requirement that market prices be established in the course of ordinary business between "buyers and sellers free to bargain."

The Platts Oilgram Price Report also is a market-based publication and is widely used to adjust prices. PFF 23-24. Accordingly, Sunoco's Platts-based EPA clauses easily pass muster under Tesoro's "market sources"/ "market-based" standard. Sunoco's complaint does not assert otherwise. Indeed, Sunoco's sole complaint concerning these publications is that: "[o]n information and belief, DESC also knew that some of the other indexes it used to set or adjust prices were not appropriate for these purposes." Compl. ¶ 26. This allegation appears to be of the same character as Sunoco's alternative EPA clause illegality argument, i.e., that EPA clauses must meet a higher standard than that defined in Tesoro. We discuss that argument in the next section.

B. Sunoco's Fair Market Value Allegations Do Not State A Cause of Action

The above analysis establishes that DESC's EPA clauses pass muster under the Tesoro standard for EPA clauses and, therefore, are legal. However, Sunoco asserts that the clauses may not be considered legal, because they were "not market-based, were not designed or intended to be used to set or adjust prices, and did not reflect at least the fair market value of military fuel" (Compl. ¶ 39). But, we are aware of no legal basis for invalidating EPA clauses upon these grounds and the complaint identifies none. In short, Sunoco's effort to raise the

standard for EPA clauses is rooted neither in Sunoco's contracts nor the applicable law. Accordingly, we see no apparent ground upon which these allegations might state a claim.

C. Sunoco's FAR 15.802(b) Allegation Does Not State A Cause of Action

In yet another effort to create an unfounded legal test for EPA clauses, Sunoco asserts that the clauses were illegal because they somehow violated FAR § 15.802(b) (currently codified at FAR 15.402(a)). Compl. ¶ 40. As this Court has already held, that regulation does not create rights for contractors. In other words, a complaint rooted in this regulation fails to state a claim upon which relief can be granted.

FAR 15.402(a) provides that:

> Contracting officers must-
>
> (a) Purchase supplies and services from responsible sources at fair and reasonable prices. In establishing the reasonableness of the offered prices, the contracting officer must not obtain more information than is necessary. To the extent that cost or pricing data are not required by 15.403-4, the contracting officer must generally use the following order of preference in determining the type of information required:
>
> (1) No additional information from the offeror, if the price is based on adequate price competition, except as provided by 15.403-3(b).
>
> (2) Information other than cost or pricing data:
>
> (I) Information related to prices (e.g., established catalog or market prices or previous contract prices), relying first on information available within the Government; second, on information obtained from sources other than the offeror; and, if necessary, on information obtained from the offeror. When obtaining information from the offeror is necessary, unless an exception under 15.403-1(b)(1) or (2) applies, such information submitted by the offeror shall include, at a minimum, appropriate information on the prices at which the same or similar items have been sold previously, adequate for evaluating the reasonableness of the price.

> (ii) Cost information, that does not meet the definition of cost or pricing data at 2.101.
>
> (3) Cost or pricing data. The contracting officer should use every means available to ascertain whether a fair and reasonable price can be determined before requesting cost or pricing data. Contracting officers must not require unnecessarily the submission of cost or pricing data, because it leads to increased proposal preparation costs, generally extends acquisition lead time, and consumes additional contractor and Government resources.

We start with the proposition that not every regulation provides the contractor with an "enforceable interest." Am. Tel. & Tel. Co. v. United States, 307 F.3d 1374, 1381 (Fed. Cir. 2002) (AT&T V). And that is precisely where this Court started in Short Bros., PLC v. United States, 65 Fed. Cl. 695, 764-65 (2005). In rejecting the very argument that Sunoco advances here, the court explained:

> The FAR provisions cited by plaintiff purport to do no more than to provide internal government direction. For example, FAR § 15.802 (1993), entitled "Policy," only requires that the contracting officer "[p]urchase supplies and services from responsible sources at fair and reasonable prices [.]" FAR § 15.802(b) . . . It does not afford a judicial remedy."

Short Bros. is consistent with the principle that contractors lack standing to bring suit based upon regulations issued for the Government's benefit. E.g., Freightliner Corp. v. Caldera, 225 F.3d 1361(Fed. Cir. 2000). The decision also is consistent with AT&T V's application of that principle. In AT&T V, the court considered a contractor's allegation that, in selecting a fixed-price contract, the Navy had "violated a variety of procurement regulations and directives that guide a contracting officer's selection of contract type." 307 F.3d at 1379. Specifically, the contractor alleged, and there was no dispute, that Navy contracting officials had failed to obtain a statutorily-mandated departmental-level certification that would have permitted it to enter into

the fixed-price shipbuilding contract at issue. But, the court refused to entertain the contractor's claim, finding no intent in the legislation to "make any provision for judicial enforcement" (id.) -- and this was so, despite the fact that passage of the statute was prompted by shipbuilding claims of the sort at issue. See Am. Tel. & Tel. Co. v. United States, 177 F.3d 1368, 1370-71 (Fed. Cir.1999) (en banc).

If the court could not find an enforceable interest for contractors in a statute, whose passage was motivated by contractors having to bear costs overruns, Sunoco will be hard pressed to find one here. Indeed, the purpose of FAR 15.402(a) is not to protect contractors (other than from needless demands for documents), but to protect the Government from prices that are "higher than warranted." All Phase Environmental, Inc., B-292-919.2, 2004 CPD ¶ 62, 2004 WL 437450 at 6. That purpose is evident, for example, in the regulation's warning against prices that include "contingency" amounts, i.e., amounts that would make a price "higher than warranted." Professors Nash and Cibinic agree, explaining that: "The primary focus of these requirements is to ensure that the Government does not pay unreasonably high prices," although they caution that "prices that are unreasonably low must also be dealt with before an award is made, because they could be evidence of mistake, non-responsibility, lack of understanding of the work, or a buy-in." Formation of Government Contracts (3rd Ed. 1998) at 1279.[8]

Indeed, if, as Sunoco argues, the contracting officer's obligation to assess price reasonableness is actionable, contract pricing never would be binding, because contractors who failed to realize the *post hoc* demands of their owners or investors could occasion this Court's intervention with no more substantial an allegation than "our price was unfair" That is precisely

[8] We are not aware of any allegation of pricing mistake, of the sort referred to in this treatise, here.

what Plaintiffs seek to do here, insisting that they be paid what they call "fair market value," a term apparently to be defined by an expert at trial.

D. Conclusion

At bottom, Sunoco's complaint concerns the type of market-based clause selected. However, absent a prohibition, the agency had the discretion to select an appropriate clause. See AT&T V, 307 F.3d at 1378-80; accord 10 U.S.C. § 2306(a) (agency head generally "may enter into any kind of contract that he considers will promote the best interests of the United States"); see also FAR 16.103(a) ("Selecting the contract type is generally a matter for negotiation and requires the exercise of sound judgment."); FAR 16.104 (selection of contract type turns upon "many factors"). Indeed, the FAR expressly affords the contracting officer latitude to use agency-prescribed EPA clauses when the standard FAR clauses are "inappropriate." FAR 16.203-4 (a)(2), (b)(2), and (c)(2) (1995).

To borrow this Court's phrase: "An important consideration is the prevailing view among courts that determinations in procurement matters should ordinarily be left to the discretion of administrative officials exercising procurement authority." Durable Metals Prods., Inc. v. United States, 27 Fed. Cl. 472, 477 n.6, aff'd, 11 F.3d 1071 (Fed. Cir. 1993) (table). And, any doubt concerning the agency's exercise of discretion in this case should be erased by the uncontroverted facts of this case: during 16 years of contract performance, Sunoco did not complain once about its contracts' formation or operation. PFF 29. That silence is telling. There simply is nothing inherently suspicious or illegal about DESC's fuel contracts. And, Sunoco, which, as claimant must prove otherwise, has not done so.

III. Sunoco's Alternative Illegality Theories In Counts II-VI Must Be Dismissed

In addition to its core complaint, that the EPA clauses violate the FAR, Sunoco presents several common-law theories of relief in Counts II-VI. These trojan horse allegations merely repackage the premise discussed in Sections II.B. and C., above: that EPA clauses must be "designed and intended," and, in fact, provide for the payment of "fair market value." As explained, however, this premise arises neither from Sunoco's contracts nor from the Federal Circuit's announced standard for EPA clauses. As explained below, the premise gains no traction in a common law guise and, therefore, Counts II-VI also fail to state a claim.

A. Count II (Misrepresentation)

In sum, Count II alleges that DESC "misrepresented and otherwise failed to disclose that PMM and other indexes were not designed or intended to be used to set or adjust prices and did not reflect at least fair market value." Compl. ¶ 55. The apparent premise for this allegation is that "[i]n basing price adjustments on PMM, DESC represented and warranted that PMM accurately reflected at least the fair market value for fuel and that prices for military fuel were fair and reasonable." Compl. ¶ 13.

"Misrepresentation occurs when the government misleads a contractor by a negligently untrue representation of fact, or fails to disclose information it has a duty to disclose." John Massman Contracting Co., v. United States, 23 Cl. Ct. 24, 32 (1991) (citing Morrison-Knudsen Co. v. United States, 170 Ct. Cl. 712 (1965)). Sunoco has not identified a fact that DESC had a duty to disclose or one that was material to its bargain. The essential terms of the DESC contracts are that Sunoco would supply fuel at a given location and that DESC would pay Sunoco according to a specified formula. Sunoco has not alleged that any part of the contract was ambiguous, that DESC failed to honor the pricing clause, or that the clause failed to operate

as described in the contract.

B. Count III ("Breach of Contract")

Count III is based upon the premise that "DESC's basing price adjustments and other indexes that were adequate to accomplish the stated purposes of its price adjustment clause to protect against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value was a material condition of the contracts upon which Plaintiffs reasonably relied in entering the contracts." Compl. ¶ 63. They make similar allegations concerning the materiality of DESC basing price adjustments "on standards that were designed or intended to be used to set or adjust prices," id. at ¶ 64, and DESC's "paying at least fair market value." Id. at ¶ 65. The short answer is that there is nothing in the contract that recites any such conditions. Accordingly, there is no basis for concluding that these were "material" conditions of the contracts or that the contract was breached, even assuming that these conditions never materialized.

C. Count IV ("Implied-In-Fact Contract")

Count IV alleges that DESC committed a "violation of law and regulation" in awarding and administering Sunoco's contracts. Compl. ¶ 76. As we have explained, there has been no violation of law or regulation. Nonetheless, an "implied-in-fact contract cannot exist if an express contract already covers the same subject matter." Trauma Service Group v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997). Here, the alleged implied-in-fact contract concerns the same subject as that addressed directly by the contracts at issue, the price of fuel already bought and sold. Accordingly, if, according to the contracts, Sunoco is entitled to

additional compensation, contracts and contract principles will provide Sunoco its remedy.[9]

D. Count V ("Failure of Consideration and Frustration of Purpose")

Count V too is based upon the triumvirate of premises discussed above, that DESC was required to: (1) base prices upon an index "adequate" to "protect against market fluctuations and to ensure that the prices DESC paid for military fuel reflected at least fair market value;" (2) base prices upon an index "designed or intended to be used to set or adjust prices" and that did "reflect at least fair market value;" (3) and pay "fair and reasonable prices" and "at least fair market value." Compl. ¶¶ 93-95.

As we have explained, these allegations are not the proper basis for a contractually-based claim and pleading them as a breach-type claim does not increase their heft. Moreover, these theories are bases for avoiding performance, and not applicable here, because performance already has occurred. See, e.g., Everett Plywood Corp. v. United States, 227 Ct. Cl. 415, 423-24, 651 F.2d 723, 728-29 (1981) (frustration excuses performance); Far West Fed. Bank v. OTS, 119 F.3d 1358, 1364 (9th Cir. 1997)(frustration of purpose is an excuse for non-performance, not a cause of action (citing Restatement (Second) of Contracts sec. 265)); Perpetual Financial Corp. v. United States, 61 Fed. Cl. 126, 138 (2004) (frustration of purpose count must be dismissed); Spalding & Sons, Inc. v. United States, 28 Fed. Cl. 242, 248-49 (1993) (frustration is a "rule respecting discharge," based on frustration of purpose, citing section 265 of the Restatement (Second) of Contracts).

[9] We understand that this allegation has not been plead as an independent ground for relief, but as an allegation of law concerning how a remedy might be obtained should the contract's express pricing clause be stricken as illegal. See Barrett Refining v. United States, 242 F.3d. 1055, 1060 (2001) (remedy for illegal pricing term is found in any implied contract concerning that term). However, as we have noted, these contracts are legal. Thus, this count adds no new allegations or necessary cause of action and should be dismissed.

But, even if the Court were to recognize frustration as an affirmative cause of action, the frustration allegations would fail. The Federal Circuit has held that, to excuse performance based upon frustration of purpose, a party must establish that: (1) a supervening event occurred; (2) the moving party did not bear the risk of the supervening event; and (3) the event rendered the value of performance worthless. Seaboard Lumber v. United States, 308 F.3d 1283, 1295 (Fed. Cir. 2002). Sunoco simply has failed to allege such factors.

E. Count VI (Mistake)

In Count VI, Sunoco argues that the same "no fair prices, no fair market value, no intent to track fair market value" litany presented in the other alternative counts entitles Sunoco to reprice its DESC contracts. Compl. ¶¶ 101-03. In Count VI, the litany is further fractured into yet two more alternatives -- mutual mistake (Compl. ¶¶ 116-19) and unilateral mistake (Compl. ¶¶ 120-23). However, because the litany (in addition to being untrue) has no legal significance, Count VI, too, must be dismissed.

1. Mutual Mistake

To establish mutual mistake so as to justify rescission of a contract, a party must demonstrate that: (1) at the time of their agreement, both parties shared a mistaken belief "regarding a fact"; (2) that the mistaken belief "constituted a basic assumption underlying the contract"; (3) that the mistake "had a material effect on the bargain;" and (4) the claimant did not assume the risk of mistake. Dairyland Power Cooperative v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994); Atlas Corp. v. United States, 895 F.2d 745, 750 (Fed. Cir. 1990).

The kind of "mistake" necessary to support reformation of a contract concerns a belief not in accord with the facts in existence at the time of contracting. Atlas Corp., 895 F.2d at 750

(rejecting claim of mutual mistake where fact had not come into existence at time of contracting).[10] Therefore, "'[a] party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as that word is defined [under the doctrine of mutual mistake of fact].'" Dairyland Power Cooperative, 16 F.3d at 1202 (citing cases and treatises).

Here, Sunoco's contention is that the PMM does not track fair market value. But, Sunoco offers no evidence concerning the elements of a mistake claim, including that both parties held an unrealized belief concerning a basic assumption underlying their bargain. Indeed, Sunoco is unlikely to do so, inasmuch as the best evidence of what the parties believed concerning their agreement is the plain language of the contract itself. Yet, Sunoco has identified no evidence that the parties believed that the PMM or Platts was anything other than what they were: publications of certain price data. Moreover, the gravaman of the complaint is not that the parties failed to understand the EPA clauses, but that they were illegal. However, in light of the Federal Circuit's decision in Tesoro, that is not the case. As a result, if there was any mistake, it was Sunoco's legal conclusion at the time it filed its claim -- and not one concerning a fact "existing" at contract formation.

2. Unilateral Mistake

To succeed on a claim of unilateral mistake, a party must demonstrate:

> (1) mistake by one party, not bearing the risk of such mistake, as to a basic assumption on which he made the contract;
>
> (2) that has a material effect on the agreed exchange of performance; and

[10] The archetypal example is Sherwood v. Walker, 66 Mich. 568, 576, 33 N.W. 919 (1887). There, a seller was permitted to void his contract to sell a cow that the parties had supposed was barren, when, in fact, she was fertile, and of good breeding stock.

> (a) the effect of the mistake is such that enforcement of the contract would be unconscionable; or
>
> (b) the other party to the contract has reason to know of the mistake.

J&E Salvage v. United States, 37 Fed. Cl. 256, 265 (1997) (citing Restatement (Second) of Contracts § 153 (1981)).

A contract will not be reformed because of a unilateral mistake in a bid unless the contractor establishes that the mistake resulted from a clear cut clerical or arithmetical error, or a misreading of the specifications. United States v. Hamilton Enterprises, 711 F.2d 1038, 1046 (Fed. Cir. 1983); Dale Ingram, Inc. v. United States, 201 Ct. Cl. 56, 74, 475 F.2d 1177, 1186 (1973). But, an agreement cannot be revised to reflect one party's subjective understanding of which the other party does not and should not have been aware. Id. Accordingly the doctrine of mistake of fact does not apply when the error made by one of the parties was based upon an erroneous prediction or judgment. Restatement (Second) of Contracts § 151a.

An actionable "mistake" is a discrepancy between an offeror's state of mind and his offer. Tony Downs Foods Co. v. United States, 209 Ct. Cl. 31, 530 F.2d 367, 372 (1976) (holding that "difficulty of performance or losses in carrying out a contract will not be treated as a basis for relief by the courts in the absence of special clause in the contract stipulations providing for such relief"). In Hamilton Enterprises, 711 F.2d at 1046, the court found no mistake because the contractor could not demonstrate that the price it bid was not "the price it intended to bid." Accord Liebherr Crane Corp. v. United States, 810 F.2d 1153, 1157 (Fed. Cir. 1987) ("there is no difference in this case between Liebherr's intended bid and the bid Liebherr actually submitted").

Sunoco cannot make the necessary showing, because the vague allegations concerning the inappropriateness of the EPA clauses are, at best, legal characterizations of the clauses or of payment eventualities that postdated Sunoco's offers (the payment, or not, of "fair market value) – and not true mistakes concerning what Sunoco intended to bid. Indeed, if that were not true, we would expect to see allegations and supporting declarations concerning the state of mind of Sunoco's contract pricing teams. Instead, we have Sunoco's thinly-disguised, and now debunked, allegations of law concerning the legal nature of the EPA clauses - and none concerning the factual circumstances of Sunoco's offers.

The final test (the alternative second prong) of a unilateral mistake claim is that the contract was unconscionable. J&E Salvage, 37 Fed. Cl. at 265. This jurisdiction has defined an unconscionable contract as one "which no man in his senses, not under delusion, would make on the one hand, and which no fair and honest man would accept on the other...." Hume v. United States, 21 Ct. Cl. 328, 330 (1886), aff'd., 132 U.S. 406 (1889); accord Fraass Surgical Mfg. Co., Inc. v. United States, 215 Ct. Cl. 820, 571 F.2d 34 (1978).

As this Court has explained:

> In analyzing the allegation of unconscionability the court should look for some type of oppression, unfair surprise and lack of consent at the time of entering into the contract. Gregory Lumber, 11 Cl.Ct. at 504 . . . . As pointed out in the Fraass decision . . . "discretion to deny enforcement to an unconscionable clause ... is not extended to permit courts to redistribute risks allocated by differences in bargaining power, but rather to prevent oppression and unfair surprise." Fraass, 215 Ct. Cl. at 830, 571 F.2d at 40.

Glopak Corporation v. United States, 12 Cl.Ct. 96, 102 (1987), aff'd., 851 F.2d 334, 338 (1988).

Here, nothing about the award was unconscionable. As many as eighteen years of Sunoco silence tell us that.

IV. Count VII (Takings Allegation) Fails To State A Claim

In yet another expression of Sunoco's legal view of the EPA clauses, Count VII states: "With no fully supporting claim of right DESC took possession of and infringed upon Plaintiffs' property rights in and in relation to the fuel it (sic) delivered." Compl. ¶ 128.[11] The Complaint further supposes that the fuel was taken "in conjunction with a violation of law and regulation." Id. at ¶ 130. Although the Court possesses jurisdiction under the Tucker Act to entertain claims properly founded upon the Takings Clause of the Fifth Amendment, these allegations fail to state such a claim.

The Takings Clause mandates "just compensation" when the Federal Government appropriates private property for "public use." U.S. Const. amend V; Bernaugh v. United States, 38 Fed. Cl. 538, 542 (1997), aff'd., 168 F.3d 1319 (Fed. Cir. 1998) (table). Here, however, the Government did not "take" property. Rather, according to the complaint, the Government purchased fuel in alleged breach of a contract.[12] "This Court's predecessor has cautioned against commingling takings compensation and contract damages." Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001). As the court explained, "In such instances, interference with such contractual rights generally gives rise to a breach claim not a

---

[11] If by this, Sunoco means that DESC took the fuel illegally, it has failed to state a claim under the Fifth Amendment, because, to maintain an action based upon a Fifth Amendment taking, plaintiff "must concede the validity of the government action which is the basis of the taking claim." Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 802 (Fed. Cir. 1993) (citing Florida Rock Indus. Inc. v. United States, 791 F.2d 893, 899 (Fed. Cir. 1986)). "The remedy for an unlawful seizure of property is in tort," which is beyond this Court's jurisdiction. American Commerce National Bank v. United States, 38 Fed. Cl. 271, 272-73 (1997).

[12] As the complaint describes it, "Plaintiffs have property rights in and in relation to the fuel it (sic) delivered to DESC. In addition, Plaintiffs have property rights in relation to DESC's procurement of the fuel Plaintiffs delivered." Compl. ¶ 127.

taking claim." Id. at 1070 (quoting Sun Oil Co. v. United States, 215 Ct. Cl. 716, 769-70, 572 F.2d 786, 818 (1978)). In other words, remedies for alleged infringement of rights established contractually generally lie in contract, not the Fifth Amendment, as it is the terms of the contract that govern the parties' respective rights and obligations. Sun Oil, 215 Ct. Cl. at 769-70, 572 F.2d at 818; accord Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 703 n.27 (1949) (if there is a contract remedy, party cannot pursue takings claim in this Court).

These decisions are consistent with the important distinction courts draw between the Government's actions in its sovereign capacity and those undertaken in its proprietary capacity. "A taking can occur only when the Government acts in a sovereign capacity." Gratz v. United States, 25 Cl. Ct. 411, 420, aff'd, 985 F.2d 583 (Fed. Cir. 1992). By contrast, when the Government negotiates and enters into a contract with a private party, "this represents activity by [the Government] in a proprietary capacity." Id. (citing Sun Oil, 215 Ct. Cl. at 770, 572 F.2d at 818). As the Gratz court explained: "This transaction is a classic illustration of the Government's acting in a proprietary capacity. Each side incurred rights and responsibilities. Plaintiff's sole remedy is a breach of contract action." Id. at 420.

Here, Sunoco does not allege – and cannot – that DESC's alleged breach resulted in the taking of the contract itself, or its potential contractual remedies. Thus, its remedies, if any, are those provided by contract law – and not the Fifth Amendment.

## V. Sunoco 's Complaints Concerning DESC's Small Business Program Must Be Dismissed

### A. The Court Lacks Jurisdiction To Entertain The Fifth Amendment Complaint

In paragraph 43 of the Complaint, Sunoco asserts that DESC's "minority owned business bidding preferences" violate the equal protection component of the Fifth Amendment. The Court

lacks jurisdiction to entertain such a complaint.

This is a court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428 (1984), aff'd, 758 F.2d 665 (Fed. Cir. 1984). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491.

In other words, the Tucker Act itself does not create a substantive right of recovery against the United States. Testan, 424 U.S. at 398; Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605-07, 372 F.2d 1002, 1007-09 (1967); United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc), cert. denied, 104 S. Ct. 1414 (1984). Accordingly, a claimant must identify a contract or some other provision of law that mandates compensation. United States v. Mitchell, 445 U.S. 535, 538 (1980).

The equal protection clause of the Fifth Amendment of the United States Constitution does not provide the requisite substantive right of recovery. Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988); accord LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (no Tucker Act jurisdiction based on the equal protection clause); Inupiat Community of the Arctic Slope v. United States, 230 Ct. Cl. 647, 662, 680 F.2d 122, 132, cert. denied, 459 U.S. 969 (1982).

Here, Sunoco asserts that DESCs' contract awards violate the "the equal protection component of the fifth amendment's due process clause by extending to minority-owned businesses bidding preferences that were not narrowly tailored to further a compelling governmental interest." Compl. at ¶ 43 (Count I). However, even if that were so, that has

nothing to do with the contract claims before this Court, because those claims are based upon contracts actually awarded to Sunoco – not contracts diverted to minority-owned businesses, rightly or wrongly. Accordingly, Sunoco's complaint is nothing more than a facial attack upon the constitutionality of DESC's fuel acquisition program – and does not concern the administration of Sunoco's contracts. As such, Sunoco cannot be heard to complain that it is its contracts that support the Court's jurisdiction, and, therefore, its complaint concerning DESC's minority-owned business program must be dismissed.

B. DESC's Small Business Program Is Not Improper

In Count I, Sunoco contends that DESC violated ("inter alia,") the "Office of Federal Procurement Policy Act ["OFPP Act"] and its implementing regulations (and, prior to its enactment, FAR § 15.610) by using prohibited auction techniques, whereby DESC awarded contracts to bidders that agreed to match other bidders' prices." Compl. ¶ 41. Sunoco also alleges that DESC violated the Defense Federal Acquisition Regulation Supplement, part 219 by "improperly soliciting and awarding portions of the procurement set aside for small businesses together with those for large businesses." Compl. ¶ 42. Yet, as explained by the contracting officer, the DESC small business set-aside procedure is substantially similar to the one set forth in the FAR. SA 1-3; see also FAR 52.219-7; SA 10.

Apparently, Sunoco is referring to DESC's small business set-aside program, which DESC effects by a technique known as the "match price method." Under this method, DESC informs small businesses of the price that the Government would otherwise pay for a particular fuel product (as the result of a pending solicitation), including, if applicable, the Government's cost for transporting that fuel from the refiner to the ultimate consumer. The small businesses

are not informed of any refiner or wholesaler's actual bid prices or of their identities. PFF 28.

FAR 15.610, which was in effect in 1995, provided that:

> e) The following conduct may constitute prohibited conduct under section 27 of the Office of Federal Procurement Policy Act, as amended (41 U.S.C. 423), and Subpart 3.104 to which civil and criminal penalties and administrative remedies apply.
>
> (1) Technical transfusion (i.e., Government disclosure of technical information pertaining to a proposal that results in improvement of a competing proposal); or
>
> (2) Auction techniques, such as--
>
> (I) Indicating to an offeror a cost or price that it must meet to obtain further consideration;
>
> (ii) Advising an offeror of its price standing relative to another offeror (however, it is permissible to inform an offeror that its cost or price is considered by the Government to be too high or unrealistic); and
>
> (iii) Otherwise furnishing information about other offerors' prices.

This Court has defined an auction as "direct bidding of price between two competing offerors." DGS Contract Services, Inc. v. United States, 43 Fed. Cl. 227, 239 (1999). Yet, as the contracting officer has explained, these prohibited "auction techniques" simply were not a part of the DESC small business set-aside program. PFF 27-28. Under the match price program, there is no such bidding. Either the small business concern meets the price or it does not. Id. Rather, DESC's set-aside program, as evinced in the DESC set-aside clauses, followed the FAR provisions (FAR 52.219-7, and FAR 19.502-3(c)), which authorized this procedure. It is illogical to conclude, as plaintiffs do, that the FAR-prescribed small business procedures are inconsistent with the FAR provision regarding auctions. Notably, the Comptroller General has found that DESC's small business procedures are consistent with applicable procurement and

small business laws and regulations. See 1988 WL 227932 (Comp. Gen.), B-230556, March 23, 1989.

Sunoco's complaint that DESC violated DFARS part 219, by awarding the set aside and non-set aside portions "together" is mystifying. We cannot find the provision to which Sunoco might be referring. The applicable FAR provision, 52.219-7 ("Notice of Partial Small Business Set-Aside") provides that:

> b) General.
>
> (1) A portion of this requirement, identified elsewhere in this solicitation, has been set aside for award to one or more small business concerns.
>
> (2) Offers on the non-set-aside portion will be evaluated first and award will be made on that portion in accordance with the provisions of this solicitation.
>
> (3) The set-aside portion will be awarded at the highest unit price(s) in the contract(s) for the non-set-aside portion, adjusted to reflect transportation and other costs appropriate for the selected contractor(s).
>
> (4) The contractor(s) for the set-aside portion will be selected from among the small business concerns that submitted responsive offers on the non-set-aside portion. Negotiations will be conducted with the concern that submitted the lowest responsive offer on the non-set-aside portion. If the negotiations are not successful or if only part of the set-aside portion is awarded to that concern, negotiations will be conducted with the concern that submitted the second-lowest responsive offer on the non-set-aside portion. This process will continue until a contract or contracts are awarded for the entire set-aside portion.

As explained by the contracting officer, that is what was done. SA 1-3. In any event, the complaint fails to demonstrate that DESC violated the FAR, and fails to demonstrate that Sunoco was "harmed in [a] concrete way contemplated by the FAR . . . ." LaBarge Prods., Inc. v. West,

46 F.3d 1547, 1556 (Fed. Cir. 1995) (contractor complaining of unauthorized disclosure of procurement information must demonstrate that it was harmed by the disclosure). Here, Sunoco fails to demonstrate how DESC's handling of a set-aside program affected contracts Sunoco actually was awarded. Accordingly, Sunoco appears to have no claim.

VI. Waiver and Estoppel Bar Sunoco's Claims

As explained above, neither the FAR nor any of the other plead small business statutes or regulations confer any unrealized right upon Sunoco. However, even assuming that were not the case, we are entitled to summary judgment on all counts, because, long ago, Sunoco waived whatever rights it imagines the FAR and these small business statutes might have conferred upon it. Similarly, through its years of inaction, Sunoco is estopped from pursuing any of these imagined rights in litigation.

Waiver has been defined as an "intentional relinquishment or abandonment of a known right or privilege." Hermes II at 409 (quoting Johnson v. Zerbst, 304 U.S. 458 (1938)); see also Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1563 (Fed. Cir. 1980) (citing Brookhard v. Janis, 384 U.S. 1, 4, 5 (1966)). Absent an affirmative congressional prohibition, a party may waive regulatory, statutory, and even constitutional rights Reservation Ranch v. United States, 39 Fed. Cl. 696, 712 (1997), aff'd, 217 F.3d 850 (Fed. Cir. 1999) (table). As we explained in more detail in our first motion for summary judgment, this circuit has held that the defense of waiver is applicable against claims of illegality founded upon assertions that the Government has violated the Federal Acquisition Regulation. E.g., E. Walters & Co., Inc. v. United States, 217 Ct. Cl. 254, 576 F.2d 362 (1978); Whittaker Electronic Systems v. Dalton, 124 F.3d 1443 (Fed. Cir. 1997).

Here, Sunoco performed 40 DESC contracts of the sort about which it now complains, over 16 years, and waited 17 years from its first contract to bring a complaint. In Hermes II, this Court held that a contractor that had performed only nine such contracts, over a seven-year period, and waited fourteen years after entering its first PMM-based contract before bringing its complaint, had waived its right to complain that those contracts were illegal. Hermes II, 58 Fed. Cl. at 413.

In reaching its conclusion, the Court first considered whether the defense of waiver was available in this circuit, against a claim of illegality. In concluding that waiver was available, the Court observed that the Federal Circuit seems to be of two minds on this issue, observing that Whittaker Elec. Sys. v. Dalton, 124 F.3d 1443 (Fed. Cir. 1997); E. Walters & Co., Inc. v. United States, 217 Ct. Cl. 254, 576 F.2d 362 (1978) (per curiam), and American Telephone and Telegraph Co. v. United States, 307 F.3d 1374 (Fed. Cir. 2002) (AT&T V) support the availability of waiver, whereas the Beta/Chris Berg line of cases can be seen as supporting an alternate view. Hermes at 412.

The Court reconciled the apparent division of authority through what it found to be the "key factual distinction" between the two lines of cases cited - the distinction being that, where waiver was found, "the contractors either complained during contract formation or, at the very least, at an early stage in the history of the conflict." Id. at 413 (quoting Hermes I, 58 Fed. Cl. at 19). In Hermes, the Court noted, the contractor "astonishingly waited 14 years after entering the first [contract at issue] and eight years after entering the last [contract at issue] before litigating." Hermes II, 58 Fed. Cl. at 413.

Reasoning that the defense of waiver was available under the right circumstances, the

Court proceeded to find that the contractor had, in fact, waived its claims, because knowledge of its right under the law could be presumed, as knowledge of the law generally is, and that "intelligent waiver" could be discerned from Hermes' general sophistication and lengthy failure to signal its dissatisfaction whatsoever. Id. at 416-18. As the Court explained it:

> It is almost universally conceded that "'wherever a contract not already fully performed is continued in spite of a known breach, the wronged party cannot avail himself of that excuse . . . . As a general proposition, one side cannot continue after a material breach by the other . . ., act as if the contract remains fully in force (although stopping performance would be fair and convenient), run up damages, and then go suddenly to court.'"

Id. at 418 (citing Ling-Temco-Vought, Inc. v. United States, 201 Ct. Cl. 135, 146 (1973) (quoting Northern Helex Co. v. United States, 197 Ct. Cl. 118, 125-26 (1972)).

The Court's conclusion in Hermes applies with equal force to Sunoco, for it, too, is a sophisticated contractor (see PFF 1), with a long history with and, therefore, understanding of DESC contracts. Indeed, Sunoco performed these contracts for nearly 20 years, did not complain about their award or administration, and did not even submit a claim until 2001 – approximately 17 years after the first contract was awarded, and nine years after MAPCO, 27 Fed. Cl. 405, was decided. That establishes beyond any doubt that Sunoco relinquished its rights – and its doing so is not surprising. DESC's studies of the PMM and its various alternatives underscore that each price publication has its own features to recommend it. PFF 16-22. It is inconceivable that Sunoco's price experts would not have appreciated this, and fashioned Sunoco's bids accordingly. Thus, it is neither inconceivable nor surprising that Sunoco would elect to accept the clauses at issue, and waive any right it might have had to a different clause.

As explained in our original motion for summary judgment, estoppel also is applicable.

Estoppel requires that the party asserting estoppel rely to its detriment upon its opponent's action or inaction. E.g., E. Walters & Co., Inc. v. United States, 217 Ct. Cl. 254, 576 F.2d 362 (1978). Here, because of its superior knowledge of its own costs, its market options, and because of its extensive experience with the clauses at issue, Sunoco was in the best position to assess the efficacy of the EPA clauses regarding its own situation. By adopting the EPA clauses in its offers with the text of the FAR available to it for consultation, Sunoco signaled its intent to forego any benefits contained in the FAR. That Sunoco continued to offer these clauses, coupled with its failure to protest clearly prejudiced the Government, because, as subsequent events showed, the Government could have obtained a deviation. Either of these would have been a "relatively painless alternative" to the after-the-fact, competition-free, speculative recovery Sunoco now seeks. Indeed, as did the contractor in Ling-Temco-Vought, Sunoco has "in effect retained all options for itself . . . made its calculations entirely in its own favor, without proper consideration of the defendant's position," and violated the "basic principle calling for fair treatment of both parties." 201 Ct. Cl. at 148, 475 F.2d at 638.

The only question remaining is whether the causes of action not discussed in Hermes also are subject to waiver and estoppel. Generally speaking, we see no basis for distinguishing among the causes. Counts II-VI merely repackage Sunoco's illegality claim. Given Sunoco's long history with DESC's fuel acquisition program, its evident sophistication in these matters, and its long silence, there is nothing about Counts II-VI that suggests that waiver does not apply. The gravaman of these counts is that Sunoco has been deprived of a contractually-based right. Yet, Sunoco does not even allege that the contracts changed in any material fashion in Sunoco's 16 years of performing them. Indeed, other than the development of legal theories, triggered

largely by the 1992 MAPCO decision (as Sunoco's claims make evident), nothing changed. Thus, any right (or cause of action) Sunoco possessed and knew about when it began filing its claims in 2001, it also possessed and should have known about after the performance of its first contract.

## CONCLUSION

For these reasons, defendant respectfully requests that the Court dismiss the Amended Complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Senior Trial Counsel
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 616-2311
Fax: (202) 353-7988

Attorneys for Defendant

OF COUNSEL:

BERNARD A. DUVAL
Counsel

HOWARD M. KAUFER
Assistant Counsel
Office of Counsel
Defense Energy Support Center
Ft. Belvoir, VA

December 15, 2005

CERTIFICATE OF FILING

I hereby certify that on December 15, 2005, a copy of the foregoing document was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Steven J. Gillingham